## In re LEXIE MINING CO.

(District Court, W. D. Pennsylvania. October, 1923.)

No. 10119.

1. **Statutes** ⊜⊐81—Workmen's Insurance Fund Act, making premiums lien on property of subscriber, not invalid, as special law concerning collection of debts.

Act Pa. June 2, 1915 (P. L. 762; Pa. St. 1920, § 21955 et seq.), in effect making amount of premium due from subscriber to State Workmen's Insurance Fund lien, as state taxes are lien, on real and personal property of subscriber, collectible as taxes are collectible, does not violate Const. Pa. art. 3, § 7, prohibiting local or special laws changing methods for collection of debts; statute being passed primarily to insure successful operation of Compensation Act.

2. **Master and servant** ⊜⊐383—Lien of premiums due State Workmen's Insurance Fund held secret, and therefore without priority.

Legislature, in Act June 2, 1915, P. L. 762, § 18 (Pa. St. 1920, § 21973), by failure to provide for certification of lien of premiums due by subscriber to State Workmen's Insurance Fund by particular officer, or by Insurance Board as such, and for certification of it on demand, created secret lien, so that priority as

to such lien could not be claimed as against holders of other liens and mortgages.

In Bankruptcy. In the matter of the estate of the Lexie Mining Company, bankrupt. Order of referee allowing claim as an unsecured claim confirmed.

W. D. Brandon, of Butler, Pa., for bankrupt.

John B. Greer, of Butler, Pa., for referee.

J. Campbell Brandon, of Butler, Pa., for trustee and receiver.

Samuel I Spyker, of Huntingdon, Pa., for State Workmen's Ins. Fund of Pennsylvania.

GIBSON, District Judge. Counsel for the State Workmen's Insurance Fund, on or about the 11th of October, 1921, filed in the office of the prothonotary for Butler county, Pa., a claim against the bankrupt for unpaid premiums due from the bankrupt as a subscriber to the State Workmen's Insurance Fund. Said claim was filed as a lien under authority purporting to be given by the eighteenth section of the Act of June 2, 1915, P. L. 762 (Pa. St. 1920, § 21973). At the same time the claim was filed the prothonotary entered judgment against the bankrupt for the amount of the claim.

Upon distribution the State Workmen's Insurance Fund offered the record of the prothonotary's office and claimed priority in payment over other liens against the estate of the bankrupt. Exception was filed to the claim, and the referee sustained the exceptions to the claim as a secured claim, and allowed it as an unsecured claim. Thereupon the matter was certified to this court. The referee largely based his decision on the ground that the eighteenth section of said act of 1915 was in conflict with article 3, § 7, of the Constitution of Pennsylvania. We are called upon at this time to determine whether or not the premiums due to the State Workmen's Insurance Fund by a subscriber are valid liens as state taxes are liens and entitled to priority of payments over other liens and mortgages.

[1] Upon the threshold of the consideration of the question involved we inclined to the belief that the referee's objections to the validity of the Compensation Insurance Act were well taken. Upon first thought it would seem that the premium due from a subscriber to the State Workmen's Insurance Fund was "a common debt owing by one member of what is in effect a mutual insurance company to the other members of that company." The corollary of this proposition is that the eighteenth section of the Act

of June 2, 1915 (which in effect provides that the amount of premium due from a subscriber, until paid, shall be a lien, as state taxes are a lien, upon the real and personal property of the subscriber, and shall be collectible as state taxes are collectible), is in violation of the Constitution of Pennsylvania, section 7, article 3, which provides: "The General Assembly shall not pass any local or special laws * * * changing methods for the collection of debts."

But consideration of the matter convinces us that section 18 of the Act of June 2, 1915 (P. L. 762), is not invalid because it is special law for the payment of debts to a mutual insurance society by its members. To so hold would be to ignore the main purpose of the statute of which it is a part. The Workmen's Compensation Act and the State Workmen's Insurance Fund Act were approved at the same time. An examination of them will disclose the fact that they are to some extent interdependent. The Workmen's Compensation Act was not a statute passed wholly in the interest of either the workmen or the employers of the state, but was a proper exercise of the police power of the Legislature in the interest of all the people. The Insurance Fund Act was passed, not so much to insure subscribers to the fund, as to insure the successful operation of the Compensation Act. The General Assembly had the power to legislate for this purpose. We may apply the language of Chief Justice Marshall relative to the powers of Congress to the powers of the General Assembly:

"But we think the sound construction of the Constitution must allow to the national Legislature that discretion, with respect to the means by which the powers it confers are to be carried into execution, which will enable that body to perform the high duties assigned to it, in the manner most beneficial to the people. Let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consistent with the letter and spirit of the Constitution, are constitutional." McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579.

We are of the opinion that the General Assembly, to insure the success of the Compensation Act and to aid its own officers in the administration of the Insurance Fund Act, had the general power to make premiums due the Insurance Fund liens upon the property of a subscriber, and to make them collectible as taxes are collected.

But this conclusion does not end our inquiry. We are called upon to determine whether the premiums due to the State Workmen's Insurance Fund by a subscriber are "entitled to a lien as state taxes are a lien, and thus entitled to priority of payments before other liens and mortgages." This inquiry requires us to go beyond the conclusion that the General Assembly had the power to make the premiums in question liens against the subscribers and collectible as state taxes are collected, and places upon us the duty of determining whether or not the Legislature has, in the State Workmen's Insurance Fund Act, enacted a statute which enables a valid lien to be filed thereunder.

Section 18 of the Insurance Fund Act (Act June 2, 1915; P. L. 762) is as follows:

"Each subscriber to said fund shall, within one month after his subscription has terminated, furnish a written statement, under oath or affirmation, to the said board, setting forth the maximum average and minimum number of employees insured in the fund that such subscriber had employed during the preceding year, and the actual amount of the money pay roll of such employees for such year; and setting forth, when the board has subdivided the employments in any group into classes, as provided in section ten of this act, the number and actual amounts of the money pay roll of such employees of each of such classes; and, thereupon, within thirty days, the said board shall state the account of such subscriber for such calendar year, based on the facts thus proven, and shall render a copy of such statement to the subscriber; and, if the amount of the premium theretofore paid by such subscriber shall exceed the amount due according to such stated account, then the excess shall be forthwith refunded to the subscriber by payment out of the fund in the manner hereinafter provided; and, if the amount shown by said statement exceed the amount of the premium theretofore paid by such subscriber, the excess shall be forthwith due and payable by the subscriber into the fund, and until paid shall be a lien, as state taxes are a lien, upon the real and personal property of the subscriber; and, if unpaid, shall be collectible as state taxes are now collectible, with interest at the rate of twelve per centum per annum, commencing thirty days after service of the copy of said account, which service shall be by registered mail."

The Act of June 15, 1911 (P. L. 955; Pa. St. 1920, §§ 20529–20531 [Purd. Dig.

vol. 7, p. 7644]), prescribes the method for the entry of state taxes as liens, and for their collection. Sections 1, 2, and 3 of said act are as follows:

"1. From and after the passage of this act, all state taxes imposed under the authority of any law of this commonwealth now existing or that may hereafter be enacted, and unpaid bonus, interest, penalties, and all public accounts settled against any corporation, company, association, joint stock association, or limited partnership, shall be a first lien upon the franchise and property, both real and personal, of such corporation, company, association, joint stock association, or limited partnership, from the date when they are settled by the auditor general and approved by the state treasurer; and whenever the franchise or property of a corporation, company, association, joint stock association, or limited partnership shall be sold at a judicial sale, all taxes, interest, bonus, penalties, and public accounts due the commonwealth, shall first be allowed and paid out of the proceeds of such sale, before any judgment, mortgage, or any other claim or lien against such corporation, company, association, joint stock association, or limited partnership.

"2. The auditor general may at any time transmit to the prothonotaries of the respective counties of the commonwealth, to be by them entered of record, certified copies of all liens for state taxes, unpaid bonus, interest, and penalties, which may now exist or hereafter arise by virtue of any law of this commonwealth; upon which record it shall be lawful for writs of scire facias to issue, and be prosecuted to judgment and execution, in the same manner as such writs are ordinarily employed.

"3. It shall be the duty of the auditor general to furnish to any person applying therefor, upon the payment of a fee of twenty-five (25) cents, for the use of the commonwealth, a certificate showing the character and amount of all liens that may be of record in his department against any corporation, company, association, joint stock association, or limited partnership, under the provisions of this act or any other law of this commonwealth."

By the foregoing provisions the General Assembly sought to remedy the situation created by the decision in Wilson & Son Co.'s Estate, 150 Pa. 285, 24 Atl. 636, wherein it was held that the state, under the existing statute, was not entitled to priority over other lien creditors, unless the lien were certified and recorded in the pro-

thonotary's office. By the act of 1911 the Legislature changed the requirements as to the place of record and made provisions to take state tax liens out of the category of secret liens except as they affected the debtor himself. This statute has been held valid, as not creating a secret lien.

A comparison of the acts of 1911 and 1915 will suggest certain doubts relative to the enforcement of the latter act. By it unpaid premiums to the Insurance Fund, after account stated by the Insurance Board, and after a statement of the account has been rendered to the subscriber, shall be a lien as state taxes are a lien. State taxes are first liens when settled by the auditor general and approved by the state treasurer. The auditor general is not connected with the Insurance Board, while the treasurer is a member of it. However, we may assume the acts to be parallel in respect to the declaration of the lien, the Insurance Board taking the place of the auditor general and the state treasurer. But the act of 1911 provides for notice of the lien, while the act of 1915 does not. By the first-mentioned act the duty is placed upon the auditor general to furnish to any one requesting it a certificate of tax liens upon payment of the fee of 25 cents, while the Insurance Fund Act is silent as to any certificate or fee therefor or as to any record of the lien to be kept by the board. Also, the act of 1911 prescribes that state taxes may be certified to the prothonotaries of the state, while the act of 1915 places in no officer the authority to certify premium liens to the prothonotaries. In the instant case the lien was certified by counsel for the Insurance Board. After certification, judgment for the amount of the claim was entered by the prothonotary. The judgment seems to be entirely without warrant, but this feature is of small importance in the present inquiry if the lien be valid upon which it was entered.

In the Act of 1915 the General Assembly has left much to be pieced out by analogy to the tax statutes. As we view the matter, however, the Insurance Fund is entitled to claim priority in payment of an unpaid premium, duly settled, if the lien is not to be held to be secret by reason of the fact that no provision is made in the act creating it, for the certification of it or issuance of any certificate by the board, or the keeping of any record of the unpaid premiums.

[2] After consideration of this question we have reached, by a different route, the same conclusion as the referee. We have been led to the reluctant opinion that the Legislature in the act of 1915, by failure to provide for the certification of the lien by a particular officer, or by the Insurance Board as such, and for the certification of it on demand, have created a secret lien, which is invalid as against the holders of other liens.

An order will be made confirming the order of the referee.