**In re METRO TRANSPORTATION COMPANY t/a Yellow Cab Company, Debtor.**

**Bankruptcy No. 86–03618S.**

United States Bankruptcy Court, E.D. Pennsylvania.

Aug. 8, 1990.

Joseph R. Baranko, Jr., Mylotte, David & Fitzpatrick, Hazleton, Pa., for Fund.

Pauline Morgan, Clark Ladner Fortenbaugh & Young, Philadelphia, Pa., for Committee.

Kevin W. Walsh, Adelman, Lavine, Gold & Levin, Philadelphia, Pa., for debtor.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

Before the court is a Motion of the Pennsylvania State Workmen's Insurance Fund ("the Fund"), a creditor in this Chapter 11 bankruptcy case, seeking a determination that its claim of $91,460.00 ("the Claim") has priority status under 11 U.S.C. § 507(a)(7)(E). We reject the Fund's request on two alternative grounds: (1) The Fund is not entitled to change the classification of its claim after the bar date, when no new factors have arisen since the bar date justifying such a change; and (2) The Fund's claim is not properly classifiable as an "excise tax," pursuant to § 507(a)(7)(E), in any event, given the Fund's status as a non-compulsory insurer under applicable Pennsylvania state law. Therefore, we conclude that the Fund is confined to an unsecured claim in the amount of $91,-460.00.

### B. FACTUAL AND PROCEDURAL BACKGROUND

On July 29, 1986, the Debtor, METRO TRANSPORTATION COMPANY, t/a YELLOW CAB COMPANY, ("the Debtor"), the principal purveyor of taxicab services in the City of Philadelphia, filed a voluntary petition for relief under Chapter 11 of the Code. The facts of the main bankruptcy case have been discussed at length in numerous Opinions by this court published in this case at 64 B.R. 968 (Bankr.E.D.Pa.1986); 78 B.R. 416 (Bankr. E.D.Pa.1987), *aff'd in part & remanded in part,* 107 B.R. 50 (E.D.Pa.1989); 82 B.R. 351 (Bankr.E.D.Pa.1988); 87 B.R. 338 (Bankr.E.D.Pa.1988); and 113 B.R. 874 (Bankr.E.D.Pa.1990). As little of this his-

tory bears any significant relationship to the instant contested matter, same will not be repeated here and the reader interested in this history is referred to those Opinions.

The instant matter arose upon a "Motion for Determination of Priority Status" filed by the Fund on February 19, 1990. This Motion was opposed by both the Debtor and the Official Unsecured Creditors' Committee ("the Committee") appointed in the Debtor's case.

A brief trial on the Motion was conducted on April 25, 1990. The only witnesses were employees of the Fund. They described the Fund as an entity created pursuant to Section 221 of the Pennsylvania Workmen's Compensation Act, 77 P.S. § 1, *et seq.* ("the Act"). Employers covered by the Act which choose to insure through the Fund pay their premiums into the Fund "for the purpose of insuring such employers against liability under article three of the [Act], and of assuring the payment of the compensation therein provided." 77 P.S. § 221. The Fund issues policies of insurance to participating employers or subscribers. 77 P.S. §§ 81, 224. However, it is important to note that, under the Act, employers have two options for procuring requisite workmen's compensation insurance in addition to doing so through the Fund: (1) they may self-insure; and (2) they may purchase workmen's compensation insurance from a private company.

The Fund's witnesses indicated the reason why the amount of the Fund's Claim kept changing: because premiums due to the Fund must be recalculated on the basis of subsequent claims, retrospective adjustments were constantly necessary. Further detailed findings on the computation of the Fund's claim are not necessary, because neither the Debtor nor the Committee are opposing the amount of the Fund's claim at this juncture, but merely its classification.

Immediately subsequent to the hearing, we ordered the parties to submit Briefs in support of their respective positions on or before May 25, 1990 (the Fund), and June 11, 1990 (the Debtor and the Committee). The matter was then listed for a settlement conference before the Honorable Judith H. Wizmur of the District of New Jersey on May 25, 1990. At that time, the parties reported that they were close to a settlement, because the classification of the Fund's claim resulted in relatively little change in the distribution to it, and the parties hoped to also resolve the Debtor's possible future use of the Fund's services at the same time.

Unfortunately, despite our granting the Debtor and the Committee two extensions of time, ultimately until July 18, 1990, to remit their submissions due to the pendency of the possible settlement, and the diligence of Judge Wizmur in following up the original conference to attempt to close a settlement, these efforts failed, requiring us to resolve this matter by written Opinion.

The Fund asserts, in its Motion and accompanying Brief, that the Claim is for delinquent premiums for workers' compensation insurance as to Policy No. 271581–2, issued to the Debtor for coverage during the period of January 1, 1982, through December 31, 1983.

The Fund contended that it has filed four related proofs of claim on the following respective dates, in the following respective amounts and classifications: (1) December 10, 1987, an unsecured claim in the amount of $40,459.00; (2) January 19, 1989, an unsecured claim in the amount of $65,152.00; (3) November 22, 1989, and unsecured claim in the amount of $91,460.00;[1] and (4) January 16, 1990, a priority claim in the amount of $91,460.00 which is the Claim in issue ("the January Claim").

The bar date for filing proofs of claim in the Debtor's bankruptcy case was set by this court as March 1, 1989. The Fund's third and fourth proofs of claim were thus

1. The Fund's November 22, 1989, proof of claim does not appear on the court's claims docket. The Fund produced a transmittal letter requesting the Clerk's Office to docket this Proof of Claim at the April 25, 1990, hearing, but did not produce a time-stamped copy of the claim. We would therefore not consider this claim as validly filed if this issue were relevant to the outcome herein, which it is not.

filed (*but see* page 145 n. 1, *supra*, regarding the third claim) after the bar date.

The Fund identifies three questions which are before the court. We will discuss them in the following order:

1. Whether the Motion is a contested matter properly filed pursuant to Bankruptcy Rule ("B.Rule") 9014.

2. Whether the proofs of claim filed by the Fund on November 22, 1989, and January 16, 1990, after the bar date, constitute appropriate amendments to the Fund's earlier timely-filed proofs of claim.

3. Whether the Fund's claim is entitled to priority status pursuant to 11 U.S.C. § 507(a)(7)(E).

We answer the first question in the affirmative and the second and third largely in the negative.

## C. DISCUSSION

1. Although, technically, the Fund's Motion should have been maintained as an Adversary Proceeding pursuant to B.Rules 3007 and 7001(2), rather than pursuant to B.Rule 9014, we will overlook same.

The Fund's Motion requests the determination of the priority of its claim. B.Rules 3007 and 7001(2) require that a request for determination of priority of a claim be brought as an adversary proceeding. The Fund urges that its Motion was properly brought pursuant to B.Rule 9014. B.Rule 9014, however, applies to contested matters "not otherwise governed by these rules." Since matters to determine priority of claims are governed elsewhere in the B.Rules, *i.e.*, in B.Rules 3007 and 7001(2), B.Rule 9014 is inapplicable.

The Fund also refers in its Brief to B.Rule 3013 which states, in pertinent part,

the court may, on motion after hearing on notice as the court may direct, determine classes of creditors ... pursuant to § 1122 ... of the Code.

This B.Rule is potentially applicable, as the Fund wishes to be included in a class of § 507(a)(7) priority claims. B.Rules 3007 and 7001(2), however, are clearly the rules which most specifically address this Mo-

tion, and therefore their terms should be followed.

Although we cannot generally excuse even technical violations of the B.Rules, we will excuse the instant, technically improper filing of the instant matter because of the presence of the following circumstances: the lack of prejudice to the Debtor and the Committee; their participation without objection to the use of the B.Rule 9014 process by the Fund at the April 25, 1990, hearing; all of the parties' participation in negotiations to settle this dispute; the Debtor's and the Creditors' Committee's failure to discuss this issue in their jointly submitted Brief; and their acquiescence to this court's deciding the Motion after failed settlement negotiations. *Compare In re Jablonski*, 70 B.R. 381, 385 (Bankr.E.D.Pa.1987), *aff'd*, 88 B.R. 652 (E.D.Pa.1988). Further, the Debtor's Third Modified Plan of Reorganization ("the Plan") was finally confirmed on October 25, 1989, and the need to resolve all remaining issues as soon as possible so that the Plan may be implemented causes us to overlook the Fund's technical error and to address the substance of its pleadings.

2. Although we will allow the Fund's claim in the amount demanded in its January claim, we will not allow the Fund to amend the classification of the claim to priority status in the January claim.

The Fund contends that its Claim against the Debtor is a priority claim in the amount of $91,460.00. The Debtor and the Committee argue that the Fund's Claim should be allowed as a general unsecured claim in the amount of $91,460.00. Obviously, given these positions of the parties, the Debtor and the Committee have conceded that either the November 22, 1989, Claim or the January Claim amends the Fund's previous, timely-filed proofs of claim as to amount, leaving, as the only matter before us for decision, whether the January Claim properly amends the classification of the Fund's Claim.

■ Amendments to timely proofs of claim are liberally allowed. Explaining the reason for this result, our colleague, the Honorable Bruce Fox, noted in *In re Hanscom Retail Foods, Inc.*, 96 B.R. 33, 35 (Bankr.E.D.Pa.1988), quoting *In re Ungar*, 70 B.R. 519, 521 (Bankr.E.D.Pa.1987), that

[s]ometimes the rationale given for permitting claims to be amended is that bankruptcy courts are courts of equity. *In re Anderson–Walker Industries, Inc.*, 798 F.2d [1285] at 1287 (9th Cir. 1986). Other times, the amendment of a claim has been likened to an amendment of a pleading. *See Fidelity and Deposit Co. v. Fitzgerald*, 272 F.2d 121, 129 n. 8, 130 n. 13 (10th Cir.1959), *cert. denied*, 362 U.S. 919, 80 S.Ct. 669, 4 L.Ed.2d 738 (1960); 3 *Collier [on Bankruptcy,]* ¶ 57.11, at 194–195 [14th ed. 1977]; 2 *Remington [on Bankruptcy,]* §§ 746–752 [ (5th ed. 1956) ]. Not only have amendments been liberally permitted, the amendments may occur after the bar date and relate back to the initial filing which was timely. *Matter of Pizza of Hawaii, Inc.*, 761 F.2d 1374 (9th Cir. 1985), *Fidelity and Deposit Co. v. Fitzgerald.*

■ While most courts have adopted this liberal approach toward allowing the amendment to timely filed proofs of claim, purported amendments will not be permitted if they actually constitute "new claims." *See In re International Horizons, Inc.*, 751 F.2d 1213, 1216 (11th Cir. 1985); *Szatkowski v. Meade Tool & Die Co.*, 164 F.2d 228, 230 (6th Cir.1947); *In re G.L. Miller & Co.*, 45 F.2d 115, 116 (2d Cir.1930); *In re Milan Steel Fabricators, Inc.*, 113 B.R. 364, 367 (Bankr.N.D.Ohio 1990); *Hanscom, supra*, 96 B.R. at 35; *In re Calisoff*, 94 B.R. 1002, 1003 (Bankr.N.D. Ill.1988); *In re Norris Grain Co.*, 81 B.R. 103, 106 (Bankr.M.D.Fla.1987); and *In re Simms*, 40 B.R. 186, 188 (Bankr.N.D.Ga. 1984). In other words, "if a 'new claim' is being asserted subsequent to the bar date, an objection to its filing must be sustained." *Hanscom*, 96 B.R. at 35. *Accord, In re Black & Geddes, Inc.*, 58 B.R. 547, 553 (S.D.N.Y.1983).

We ourselves addressed the topic of amendments to proofs of claim in *In re Owens*, 67 B.R. 418, 423 (Bankr.E.D.Pa. 1986) ("*Owens I*"), *aff'd sub nom. United States v. Owens*, 84 B.R. 361 (E.D.Pa.1988) ("*Owens II*"), stating that

the courts have been completely consistent in holding that, while amendments to more clearly set forth previously timely-filed claims are freely permitted after the bar date, amendments "are not to be used to assert an entirely new claim," *In re International Horizons, Inc.*, 751 F.2d 1213, 1215 (11th Cir.1985), nor can they relate back to the date of earlier proofs of claim when the earlier proofs "did not give fair notice of the conduct, transaction or occurrence that forms the basis of the claim asserted in the amendment." *In re Westgate–California Corp.*, 621 F.2d 983, 984 (9th Cir.1980). Hence, "amendments after the bar date are to be scrutinized very closely to ensure that the amendment is in fact genuine and not an entirely new claim." [*In re*] *W.T. Grant, supra*, 53 B.R. [417,] at 422 [ (Bankr.S.D.N.Y.1985) ]. *See also, e.g., In re Black & Geddes, Inc.*, 58 B.R. 547, 553 (S.D.N.Y.1983); *In re Computer Devices, Inc.*, 51 B.R. 471, 477–78 (Bankr.D.Mass.1985); and *In re W.T. Grant Co.*, 37 B.R. 593, 594 (Bankr.S.D. N.Y.1984).

The Eleventh Circuit, in *International Horizons, supra*, 751 F.2d at 1216, states the rule to be followed in such circumstances thusly:

[i]n a bankruptcy case, amendment to a claim is freely allowed where the purpose is to cure a defect in the claim as originally filed, describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim. *See Szatkowski v. Meade Tool & Die Co.*, 164 F.2d 228, 230 (6th Cir.1947); *In re G.L. Miller & Co.*, 45 F.2d 115 (2d Cir.1930). Still, the court must subject post-bar date amendments to careful scrutiny to assure that there was no attempt to file a new claim under the guise of amendment. *In the Matter of Commonwealth Corp.*, 617 F.2d 415, 420 (5th Cir.1980).

The Third Circuit, in *In re Pigott*, 684 F.2d 239, 245 (3d Cir.1982), discussed the status of tardily-filed proofs of claim at length. Interpreting the Code's predecessor, the Bankruptcy Act, the *Pigott* court stated that "[t]o permit the filing of a proof of claim under the guise of an amendment months out of time ... would militate against the efficient administration of bankruptcy proceedings." The deadlines for filing proofs of claim are thus to be "strictly construed," *id.* at 242, to ensure the efficient administration of bankruptcy cases and to provide all parties with finality. *See also In re Vertientes, Ltd.*, 845 F.2d 57, 60 (3d Cir.1988); *Milan Steel, supra*, 113 B.R. at 367; *In re Johnson*, 84 B.R. 492, 494 (Bankr.N.D.Ohio 1988); *Norris Grain, supra*, 81 B.R. at 106; *Owens I, supra*, 67 B.R. at 424; *In re Sitzberger*, 65 B.R. 256, 260 (Bankr.S.D.Cal.1986); and *In re W.T. Grant Co.*, 53 B.R. 417, 420 (Bankr.S.D.N.Y.1985).

■ Caselaw has generally held that a post-bar date proof of claim seeking to merely increase the amount of a timely-filed claim is not the assertion of a new claim, but an allowable amendment to a prior claim. *See In re Candy Braz, Inc.*, 98 B.R. 375, 381 (Bankr.N.D.Ill.1988); and *Hanscom, supra*, 96 B.R. at 35. Therefore, the Fund's attempt to amend the amount of its claim is, as the Debtor and the Committee apparently concede, permissible.

■ However, where a claimant attempts to change the nature of a proof of claim, such as when a taxing authority attempts to increase its proof of claim by adding different types of taxes or different tax years than that stated in the original proof of claim, such amendments have generally been disallowed. *See Candy Braz, supra*, 98 B.R. at 375; *Hanscom, supra*, 96 B.R. at 35; and *Simms, supra*, 40 B.R. at 189. This is what the Fund seeks to do in urging us to classify its Claim as entitled to priority status.

In its post-trial Brief, the Fund relies upon general language in the caselaw stating that an amendment to a proof of claim is to be allowed where the original claim provided notice of the existence, nature, and amount of the claim. *Owens II, supra*, 84 B.R. at 363. There, however, the district court concluded that, irrespective of what notice was provided in the original proof of claim, "amendments to proofs of claim should *in the absence of contrary equitable considerations or prejudice to the opposing party* be freely permitted." *Id.*, quoting *W.T. Grant Co., supra*, 53 B.R. at 420 (emphasis added).

The Fund argues that because the January Claim and its timely proofs of claim all identify the debt as being for "delinquent premiums for Worker's Compensation Policy No. 271581–2," and naming the claimant as the Fund, the January Claim should be allowed as an amendment because it does not state a new claim but merely states the original claim with greater particularity. Post-bar-date amendments have generally been allowed to describe a claim with greater particularity. *See, e.g., In re White Motor Corporation*, 59 B.R. 286, 288 (Bankr.N.D.Ohio 1986).

However, the nature of a priority claim is much different from that of a general unsecured claim. Reclassifying the claim as a priority claim impacts the Debtor's Plan and the distributions to be paid to the other creditors under the Plan. This situation is therefore different from those in which amendments have been permitted to increase the amount of a claim when post-bar date events have resulted in a larger, but otherwise unchanged debt.

The Fund does not suggest that any post-bar-date event occurred which necessitated the reclassification of the Claim, as opposed to the amount of the Claim. If the Claim deserved priority, it deserved it at the time that the Fund filed its first proof of claim. The Fund should not therefore be permitted, at this late date, to assert what is essentially a new claim seeking priority treatment.

A priority claim is a claim completely different from that asserted by the Fund in its timely proofs of claim. The Fund's desire to reclassify its Claim is therefore an attempt to assert an untimely new claim. We must follow *Pigott* and strictly con-

strue the statute of limitations set up by the bar date and conclude that the January Claim is an untimely assertion of a new claim. Thus, it is not an allowable amendment to the Fund's timely proofs of claim.

Over the last decade, many of the courts deciding whether to allow a post-bar-date amendment to a timely proof of claim have not limited their analysis to whether the amendment states a new claim, but have relied upon five equitable factors originally set forth by the court in *In re Miss Glamour Coat*, 1980 WL 1668, 80–2 U.S.T.C. (CCH), ¶ 9737, at 85,431 (S.D.N.Y. October 8, 1980). This analysis supports the notion that a "balancing of equities is required to determine propriety of an amendment." *In re Overly–Hautz Co.*, 57 B.R. 932, 936 (Bankr.N.D.Ohio 1986), quoting *In re Gibraltor Amusements, Ltd.*, 315 F.2d 210 (2d Cir.1963). Other courts referencing the *Miss Glamour Coat* criteria include *International Horizons, supra*, 751 F.2d at 1216; *In re AM International, Inc.*, 67 B.R. 79, 82 (N.D.Ill.1986); *In re Garner*, 113 B.R. 352, 357 (Bankr.N.D.Ohio 1990); *In re Unroe*, 104 B.R. 77, 79 (Bankr.S.D. Ind.1989), *aff'd*, 1990 WL 146944, 1990 U.S. Dist. LEXIS 1763 (S.D.Ind. Feb. 2, 1990); *Candy Braz, supra*, 98 B.R. at 381; *Calisoff, supra*, 94 B.R. at 1004 n. 3; and *In re F.C.M. Corp.*, 85 B.R. 628, 629–30 (Bankr. S.D.Fla.1988). *But see Milan Steel, supra*, 113 B.R. at 368 (the *Miss Glamour Coat* factors are very general and result in a lack of predictability).

The Tax Court, in *Miss Glamour Coat*, ruling upon the propriety of a post-bar date amendment filed by the IRS, considered the following five equitable factors:

(1) Whether the bankrupt and creditors relied upon the IRS' earlier proofs of claim or whether they had reason to know that subsequent proofs of claim would follow pending the completion of the audit ...

(2) Whether the other creditors would receive a windfall to which they are not

entitled on the merits by the court not allowing this amendment to the IRS proof of claim ...

(3) Whether the IRS intentionally or negligently delayed in filing the proof of claim stating the amount of ... taxes due ...

(4) The justification, if any, for the failure of the IRS to file for a time extension for the submission of further proofs of claim ...

(5) Whether or not there are any other considerations which should be taken into account in assuring a just and equitable result ...

*Owens I, supra*, 67 B.R. at 424, quoting *Miss Glamour Coat*, 80 U.S.T.C. at 85,434 to 85,435 (citations omitted). In *Owens I*, 67 B.R. at 424, however, we concluded that, while the factors set forth in *Miss Glamour Coat* are worthy of consideration, we were not inclined to consider them as determinative. Rather, in *Owens I*, we concluded that "the combination of the absolute nature of the policy barring late filings expressed in *Pigott*, and the failure of the IRS to utilize Bankruptcy Rule 3002(c)(1)" to obtain an extension of time to file its proof of claim,[2] were sufficient justification to preclude the IRS' claim. 67 B.R. at 424.

We emphasize, as we did in *Owens I, id.* at 423, that the deadlines for filing proofs of claim must be strictly construed. The Fund, here, does not deny that the January Claim was tardily filed. We must determine whether, after a balancing of the equities, the January Claim properly amends the Fund's Claim to reclassify it as a priority claim. We conclude that it does not.

We begin our analysis by reviewing the five factors set forth in *Miss Glamour Coat*. Factors 1, 3, 4, and 5 do not lie in the Fund's favor. The Debtor and creditors relied upon the Fund's earlier proofs of claim in the process of negotiating and voting on the Plan and had no reason to know that a subsequent proof of claim

2. B.Rule 3002(c)(1) provides, in pertinent part, "On motion ..., the court may extend the time for filing of a claim by the United States." As the District Court noted, in *Owens II*, 84 B.R. at 363, "Rule 3002(c)(1) gives the United States a

flexibility not available to other creditors." The Fund is obviously not covered by B.Rule 3002(c)(1), and thus is denied that Rule's dispensation.

seeking to reclassify a claim would be filed. All proofs of claim filed by the Fund prior to the January Claim stated unsecured claims. Until the January Claim was filed, neither the Debtors nor the creditors had any idea that the Fund would later decide that its Claim was a priority claim. This factual situation is, on this basis, distinct from that in *Unroe, supra*, 104 B.R. at 80, in which the court concluded that the debtor was expecting the filing of an additional claim by the IRS.

The Fund's failure to file a timely proof of claim requesting priority treatment was due to its own negligence. The Fund was not misled by any action or inaction of another party. *Compare Garner, supra*, 113 B.R. at 358. It was the Fund's responsibility to investigate its claim and make the true nature of its claim known to the court in a timely manner. The Fund could not point to any factors outside of its control that interfered with its filing a timely proof of claim, including a properly-classified Claim. Therefore, it simply failed, without just cause, to meet this responsibility. *See Norris Grain, supra*, 81 B.R. at 108, citing *In re Saltzmann*, 25 B.R. 125, 128 (Bankr.E.D.Wis.1982) ("[w]here a litigant's own internal procedures are the cause of the failure to comply with proper legal procedures, courts should generally refuse to grant relief from the consequence of the lack of compliance").

The application of this factor to the instant facts is in contrast to that in *Sitzberger, supra*, 65 B.R. at 261, where the court allowed an amendment to a proof of claim by the IRS where it concluded that the IRS had no knowledge, nor should it have had knowledge, of the debtor's tax liability pre-bar date. Here, whatever the Fund knew in January, 1990, regarding its claim, it knew or should have known prior to the bar date. The Fund never requested an extension of time to file a late proof of claim. This leads us to conclude that the idea that its Claim was entitled to priority was merely an afterthought which the Fund neglected to consider earlier.

Finally, consideration of the "absolute nature of the policy barring late filings

expressed in *Pigott*," *Owens I*, 67 B.R. at 424, must be taken into account, especially at this point in the case in light of the fact that a Plan has been confirmed. In refusing to allow an amended proof of claim, the court, in *Milan Steel, supra*, 113 B.R. at 371, stated that "allowing the IRS' amended proof of claim, ..., would only condone the IRS' intentional non-compliance with bankruptcy law and undermine the need for finality."

The equities of the second factor set forth in *Glamour Coat, i.e.*, whether the other creditors would receive a windfall to which they are not entitled if the amendment is not allowed, do not fall squarely on either side. The other creditors of the Debtor will receive what they were promised under the Debtor's Plan if the amendment is denied. The Fund had the opportunity to review the Debtor's Plan prior to confirmation and, therefore, should have known its place in the distribution scheme. Since the Fund failed to argue its right, if any, to priority treatment at that time, it cannot now be said that the other creditors would receive a windfall to which they are not entitled.

The court in *In re Major Mud & Chemical Co.*, 81 B.R. 412, 415 (Bankr.W.D.La. 1988), faced similar considerations and concluded that

> [a]s a result of disallowing the amended claim, creditors will benefit from a more than $1,000,000 decrease in priority tax claims against the debtor. Given the [IRS's] dilatory actions, however, creditors will not receive a windfall to which they are not entitled.

To allow the Claim to be reclassified as a priority debt at this juncture would prejudice the other creditors, who would accordingly receive less than they reasonably contemplated under the Plan. In light of the Fund's own negligence in delaying to make a priority claim, such a result would be unjust. The equities of the situation thus tip in favor of the Debtor and the Committee and against the Fund.

In *Garner, supra*, the court denied a request by the IRS "to amend its proof of claim after the expiration of the bar date to

promote one of its claims from general unsecured to priority status." 113 B.R. at 357. Granting the IRS' allowance would have rendered the debtor's plan infeasible and resulted in dismissal of the case. *Id.* at 355–56.

While, here, the allowance of the January Claim would not result in the dismissal of the Debtor's bankruptcy case, the other creditors would be prejudiced. Also, as in *Garner,* the Fund has been unable to articulate any reasons to justify its error in initially allegedly misclassifying its Claim. We agree with the court in *Unroe,* 104 B.R. 80, quoting *In re Midwest Teleproductions, Inc.,* 69 B.R. 675, 678 (Bankr.N.D. Ohio 1987), that " '[e]quity aids the vigilant.' "

■ The bankruptcy court has broad discretion in allowing post-bar-date amendments to proofs of claim. *Milan Steel, supra,* 113 B.R. at 368; and *Candy Braz, supra,* 98 B.R. at 380. The balancing of the equities clearly requires that the Fund's January Claim cannot be allowed as an amendment to its earlier proofs of claim to reclassify the Claim. However, as we observe in the following discussion, even if the January Claim were found to have been a proper amendment to the Fund's Claim, the Claim nevertheless would have to remain classified as a general unsecured claim, since the Fund is not entitled to a priority under 11 U.S.C. § 507(a)(7)(E).

3. Payments for Premiums due under the Pennsylvania Workmen's Compensation Act are not an "Excise Tax" entitled to priority under 11 U.S.C. § 507(a)(7)(E).

The substance of the Fund's position in its Motion is that it is entitled to priority under 11 U.S.C. § 507(a)(7)(E) [3] because it is for an excise tax. We disagree. The payments due to the fund under Act are "charges," not an excise tax and, therefore, are not entitled to priority under 11 U.S.C. § 507(a)(7)(E) in any event.

■ To reach this conclusion, we first reviewed the Act but were mindful that, while "a state's determination of whether something is a tax is persuasive and entitled to great weight, it is not binding." *In re Adams,* 40 B.R. 545, 546 (E.D.Pa.1984), quoting *New Jersey v. Anderson,* 203 U.S. 483, 491, 27 S.Ct. 137, 139, 51 L.Ed. 284 (1906). *See also New Neighborhoods v. West Virginia Workers' Compensation Fund,* 886 F.2d 714, 716, 718 (4th Cir.1989); and *In re Smith–Jones, Inc.,* 36 B.R. 408, 410 (Bankr.D.Minn.1984). Federal law defines a "tax" for purposes of the Code. *New Neighborhoods,* 886 F.2d at 716, 718; *Adams,* 40 B.R. at 546–47; and *Smith–Jones,* 36 B.R. at 410.

■ Further, labels such as the terms "premium" and "tax" which are used in a statute are also not controlling. It is incumbent upon the reviewing court to look past the labels to the substance of the statute. *See New Neighborhoods,* 886 F.2d at 718.

■ In an early decision, *In re Lexie Mining Co.,* 1 F.2d 344, 345 (W.D.Pa.1923), the District Court for the Western District of Pennsylvania confronted the issue of "whether or not the premiums due to the State Workmen's Insurance Fund by a subscriber are valid liens as state taxes are liens and entitled to priority of payments over other liens and mortgages." The court reviewed the 1915 version of the Act and concluded that unpaid premiums are collectible as taxes and

---

**3.** This Code section provides as follows:

**§ 507. Priorities**
  (a) The following expenses and claims have priority in the following order:

  .    .    .    .    .

  (7) Seventh, allowed unsecured claims of governmental units; only to the extent that such claims are for—

  .    .    .    .    .

  (E) an excise tax on—

(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or

(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition;

. . .

the Insurance Fund is entitled to claim priority in payment of an unpaid premium, duly settled, if the lien is not to be held to be secret by reason of the fact that no provision is made in the act creating it, for certification of it or issuance of any certificate by the board, or the keeping of any record of the unpaid premiums.

*Id.* at 347.

The court concluded that the 1915 Act created a secret lien invalid against other lienholders because it failed to "provide for the certification of the lien by a particular officer, or by the Insurance Board" but, rather, for the certification of the lien on demand. *Id.* Therefore, it disallowed the Fund the priority which it sought.

The section of the 1915 Act discussed by the court in *Lexie Mining* remains materially unchanged in the present version of the Act, at 77 P.S. § 343. The *Lexie Mining* decision, therefore, supports our conclusion, although we arrive at that conclusion by taking a different road, see pages 152–54 *infra*, *i.e.*, that charges due under the Act are not entitled to priority treatment under the Code as taxes. Our conclusion is consistent with the result in *Campbell v. Harrisburg Manufacturing & Boiler Co.*, 19 D. & C. 558, 561–62 (Dauphin Co. C.P.1933), which held that a claim of the State Workmen's Insurance Fund for the unpaid balance of a workmen's compensation insurance premium was not a lien upon the property of the insured, nor was it entitled to priority in distribution of the insured's assets upon insolvency.

As we indicated at page 145 *supra*, Section 221 of the Act, 77 P.S. § 221, establishes the State Workmen's Insurance Fund. We note that this section and the following sections utilize the terms "premiums," "insuring ... against liability," "rates of insurance," "subscribers," and "policies" in discussing the Fund. *See* 77 P.S. §§ 221, 241, 242, 261, 262. The use of these terms evinces a general intent on the part of the Commonwealth that the Fund be considered an insurance vehicle, not a tax vehicle.

While the language of the Act is the appropriate starting point, federal law regarding whether a charge is a tax or simply a fee is controlling. The pertinent case-law provides us with several standards to assist us in making this determination. In *City of New York v. Feiring*, 313 U.S. 283, 285, 61 S.Ct. 1028, 1029, 85 L.Ed. 1333 (1941), the Supreme Court stated that, for the purposes of priority under the Bankruptcy Act, taxes include "those pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it."

The Fourth Circuit, in *New Neighborhoods, supra*, 886 F.2d at 718, interpreted the *Feiring* definition to mean that "a payment may be classified as a tax if the state has compelled the payment and if the payment serves a public purpose." *See also In re Pan American Paper Mills*, 618 F.2d 159, 162 (1st Cir.1980).

In *Adams, supra*, 40 B.R. at 546–47, quoting an earlier Supreme Court case, *New Jersey v. Anderson, supra*, 203 U.S. at 492, 27 S.Ct. at 140, the court distinguished a "tax" from a "charge" as follows:

Under federal law, a tax has certain characteristics which distinguish it from a mere debt or charge. The major distinction lies in whether it is an involuntary charge assessed on all or a charge for services rendered in the nature of a contractual or quasi-contractual obligation as the *Anderson* Court explained:

"[a] tax is a pecuniary burden laid upon individuals or property for the purpose of supporting the government.

.    .    .    .    .

Taxes are not debts ... *Debts are obligations for the payment of money founded upon contract, express or implied.* Taxes are imposts levied for the support of the Government, or for some specific purpose authorized by it. The consent of the taxpayer is not necessary for their enforcement. They operate *in invitum.* Nor is their nature affected by the fact that in some

states ... an action of debt may be instituted for their recovery. *The form of the procedure cannot change their character* (emphasis added)."

The Sixth Circuit, in *United States v. River Coal Co.*, 748 F.2d 1103, 1106 (6th Cir.1984), stated that "the chief distinction is that a tax is an exaction for public purposes while a fee relates to an individual privilege or benefit to the taxpayer."

An excise tax has been defined as "an indirect tax, one not directly imposed upon persons or property (citation omitted), and is one that is imposed on the performance of an act, the engaging in any occupation, or the enjoyment or [sic] a privilege." *In re Tri–Manufacturing & Sales Co.*, 82 B.R. 58, 60 (Bankr.S.D.Ohio 1988). 

In *Smith–Jones, supra,* the Minnesota bankruptcy court reviewed the Ohio Workers' Compensation Fund and concluded that even though "the State insurance fund is in lieu of private workers' compensation insurance carriers operating in the state" and "participation in the fund is mandatory for employers in Ohio," 36 B.R. at 409, the payments due to the fund under the statute were insurance premium payments, not a tax. *Id.* at 410. The court was influenced by the fact that the Ohio statute used the word "premium," the premiums were. determined by factors consistent with insurance principles, the fund was audited by recognized insurance actuaries, the fund was only to pay workers' compensation claims and not for the benefit of the general public, and Ohio chose to cast itself in the role of an insurer. *Id. Contra, In re Carlton Enterprises, Inc.*, 103 B.R.. 876 (N.D.Ohio 1989); and *In re Primeline Industries, Inc.*, 103 B.R. 861 (N.D.Ohio 1987).

Similarly, in *Brock v. Washington Metropolitan Area Transit Authority*, 796 F.2d 481 (D.C.Cir.1986), the court, interpreting the District of Columbia's Workers' Compensation scheme, concluded that the sums payable to the workers' compensation fund were fees rather than taxes because the "primary purpose of the [statute] is regulation, not the raising of revenues." *Id.* at 488. The court characterized the fee

as a "user fee," as opposed to a "proscribed tax." *Id.* at 484. The court determined that the "entire workers' compensation scheme, of which the Special Fund is an integral part, regulates employers' liability for industrial accidents," *id.* at 488; the "fees are not designed to raise revenues for public goods." *Id.* at 489.

In *Union Pacific R.R. v. Public Utility Commission*, 899 F.2d 854 (9th Cir.1990), the Ninth Circuit Court of Appeals was called upon to determine whether levies imposed on railroads under an Oregon statute to recoup costs of regulating railroads within the state were "taxes." The Court of Appeals relied upon a determination of the Supreme Court in *Edye v. Robertson*, 112 U.S. 580, 595–96, 5 S.Ct. 247, 252–53, 28 L.Ed. 798 (1884), that the purpose of the levies required by the act in issue in that case "was merely a means of requiring those who profited from the business to pay the costs of regulating it." The Court concluded that the money collected in the case before it was not a tax, as it did "not go to the general support of the government." *Id.* at 596, 5 S.Ct. at 252. Thus, the *Union Pacific* court, 899 F.2d at 861, interpreted *Edye, supra,* to mean that "[a] levy to defray the cost of regulation in the public interest rather than to pay for services or property provided by the government was held not to be a tax," and concluded that the levies imposed by the Oregon statute were not taxes.

By way of contrast, the Fourth Circuit Court of Appeals, in *New Neighborhoods, supra,* interpreted the West Virginia Workers' Compensation Law and concluded that the premiums collected thereunder were "pecuniary burdens for public governmental use," and, therefore, taxes. 886 F.2d at 718. The Court found that the public purpose of the law was "to allocate the burden of the costs of injured employees and/or of their dependents among employers rather than among the general public." *Id.* at 718–19. The *New Neighborhoods* court acknowledged that, while the West Virginia law has many characteristics of an insurance scheme, *i.e.*, it discusses premiums and options to self-insure, it is "compulsory

for employers and compelled by the state. Also, the Fund exists for the benefit of employees and the public generally." *Id.* at 719.

By way of contrast to the West Virginia law, the Pennsylvania Act is not a revenue-raising statute for the benefit of the general public. It is, rather, a statute intended to regulate employers' liability for workplace accidents and injuries. Contribution to the Fund is not a burden shared by all taxpayers indiscriminately. Only a very specific group of taxpayers contribute to the Fund. Premiums paid to it are not mandatory payments for that group either, as they may elect to self-insure or obtain comparable insurance from a private insurer elsewhere. The latter option is not available to West Virginia employers, placing the Fund, in Pennsylvania, on a par with numerous private insurers. The benefits from the Fund are also earmarked for a very specific group: those injured in the workplace whose employers are contributors to the Fund. Thus, the Fund's charges have very little similarity to a "tax."

It must be recalled that there is a "presumption in bankruptcy cases ... that the debtor's limited resources will be equally distributed among his creditors, [causing] statutory priorities [to be] narrowly construed." *In re Great Northeastern Lumber & Millwork Corp.,* 64 B.R. 426, 427 (Bankr.E.D.Pa.1986). *Cf. In re Leedy Mortgage Co.,* 111 B.R. 488, 491 (Bankr.E.D.Pa.1990) (administrative claims are construed narrowly). Considering this presumption and further noting the distinctions between the Act and the comparable laws of certain other states, particularly West Virginia, where premiums payable to a similar fund have been determined to be "taxes," causes us to conclude that the Debtor's obligation to the Fund is not the type of obligation defined as a tax by the Supreme Court in *Anderson, supra,* or *Feiring, supra.* Therefore, we conclude that the Fund's claim is not a tax entitled to priority under 11 U.S.C. § 507(a)(7)(E).

## D. CONCLUSION

On the basis of either of two alternative, equally strong grounds, we are compelled to enter an order rejecting the Fund's attempt to assert a priority claim, denying the Motion before us, and establishing the Claim as an unsecured claim in the amount of $91,460.