**In re WALLS & ALL, INC., a/k/a Lebo Wallcoverings, Debtor.**

Civ. A. No. 90-1715.
Bankruptcy No. 89-2812.
Motion No. 90-563m.

United States District Court,
W.D. Pennsylvania.

May 24, 1991.

Thomas E. Reilly, Pittsburgh, Pa., for Mellon Bank.

Gregory Harbaugh, Pittsburgh, Pa., for Trustee.

Bradley S. Gelder, Pittsburgh, Pa., for debtor.

## MEMORANDUM OPINION

BLOCH, District Judge.

Before this Court is the appeal of Mellon Bank, N.A., from a bankruptcy court order of July 20, 1990, denying Mellon Bank's motion to amend its proof of claim.

### I. Facts

On October 23, 1989, debtor Walls & All, Inc., also known as Lebo Wallcoverings, filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701, et seq., and a trustee was appointed. Prior to filing for bankruptcy, debtor initiated a national sales campaign, resulting in numerous telephone and mail order sales for wallpaper. Customers were required at a minimum to make an initial deposit on merchandise they ordered which were charged to their respective Master-Card or Visa accounts. The balance of the purchase price, if any, was to have been charged against their cards upon delivery of the merchandise. During this campaign, debtor and Mellon Bank were parties to a membership agreement, whereby Mellon Bank agreed to honor credit and debit cards of MasterCard and Visa cardholders, and to act as a local depository. Debtor filed for bankruptcy after initiation of the sales campaign, leaving many of its customers without delivered merchandise, and resulting in Mellon Bank crediting the customers' accounts for undelivered goods.

On February 13, 1990, the bankruptcy court issued an order fixing a claims bar date of May 13, 1990. On May 2, 1990, appellant Mellon Bank filed a proof of claim with the bankruptcy court claiming an unsecured liability of debtor to Mellon Bank totalling $66,062.29 plus interest and attorney's fees. This figure represents charge-backs to debtor for refunds advanced by Mellon Bank on charge card sales which were later credited by Mellon Bank to debtor's customers' accounts, pursuant to the membership agreement between debtor and Mellon Bank. On June 8, 1990, Mellon Bank moved to amend its

proof of claim in order to assert priority status on the $66,062.29, and the trustee objected.

In its motion to amend its proof of claim, Mellon Bank asserted that, since the time it filed the original proof of claim, Mellon Bank had completed an analysis of the amounts charged back by debtor. According to Mellon Bank, this analysis revealed that the $66,062.29 set forth in the original proof of claim represented refunds made to debtor's customers on charge card purchases for merchandise never delivered to debtor's customers, which merchandise was intended for personal, family, or other use. According to Mellon Bank, this amount is granted sixth place priority under the Code, pursuant to 11 U.S.C. § 507(a)(6). Title 11 U.S.C. § 507(a)(6) grants a sixth place priority to:

> allowed unsecured claims of individuals, to the extent of $900 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use of such individuals, that were not delivered or provided.

11 U.S.C. § 507(a)(6). According to Mellon Bank, the monies set forth in their proof of claim represent such deposits made by consumers to debtor which have been refunded to the consumers by Mellon Bank; therefore, Mellon Bank now stands in the shoes of those consumers, by way of an implied assignment, and has a sixth place priority claim against the debtor for the full principal amount of $66,062.29.[1]

On July 17, 1990, the bankruptcy court held a hearing on Mellon Bank's motion to amend its proof of claim, and denied the motion. The bankruptcy court stated that Mellon Bank "has offered no acceptable and/or appropriate excuse or reason as to why it should be permitted to file an untimely claim." Mellon Bank moved for reconsideration of the order, and after a hearing on this matter, the bankruptcy

court denied the motion on September 4, 1990.

On appeal, Mellon Bank argues that the bankruptcy court erred in requiring Mellon Bank to produce evidence to establish its priority status at the hearing on its motion to amend proof of claim. Mellon Bank further argues that the bankruptcy court erred as a matter of law in concluding that the unsecured claim of Mellon Bank is not entitled to the priority set forth in 11 U.S.C. § 507(a)(6). Contrary to Mellon Bank's contention, this Court finds that the bankruptcy court afforded Mellon Bank ample opportunity to persuade the court to allow its amendment. Instead, Mellon Bank chose to argue entitlement to priority status. Because this Court finds that the bankruptcy court properly denied Mellon Bank's motion to amend, this Court need not address Mellon Bank's second contention regarding assignment and subrogation.

## II. Standard of review

In reviewing bankruptcy court decisions, this Court functions as an appellate court, and findings of fact shall not be set aside unless clearly erroneous. Bankr.R. 8013. *See In re Owens*, 84 B.R. 361, 363 (E.D.Pa. 1988). The decision to grant or deny an amended proof of claim is within the bankruptcy judge's discretion. *Owens*, 84 B.R. at 363. "On appeal, an abuse of this discretion will only be found where (1) the decision was based on an erroneous conclusion of law; (2) where the record contains no evidence on which the bankruptcy judge could have based his decision; or (3) where the supposed facts found are clearly erroneous as found." *In re AM International, Inc.*, 67 B.R. 79, 81 (N.D.Ill.1986).

## III. Discussion

 It is well settled that, absent contrary equitable considerations or prejudice to the opposing party, amendments to proofs of claim should be freely permitted. *See Owens*, 84 B.R. at 363; *In re W.T.*

---

1. Mellon Bank continues to assert its claim for interest and attorney's fees on this amount as a general, unsecured claim.

*Grant Co.*, 53 B.R. 417, 420 (Bankr.S.D.N. Y.1985). "Sometimes the rationale given for permitting claims to be amended is that bankruptcy courts are courts of equity.... Other times, the amendment of a claim has been likened to an amendment of a pleading." *In re Hanscom Retail Foods, Inc.*, 96 B.R. 33, 35 (Bankr.E.D.Pa.1988) (*quoting In re Ungar*, 70 B.R. 519, 521 (Bankr. E.D.Pa.1987)). However, such amendments are to be allowed only where the original claim prompted notice to the court of the existence, nature, and amount of the claim. *In re International Horizons, Inc.*, 751 F.2d 1213, 1217 (11th Cir.1985); *Owens*, 84 B.R. at 363; *see also AM International*, 67 B.R. 79, 82. Amendments are also permissible to cure defects in a claim already filed, to describe a claim with greater particularity, or to plead a new theory of recovery on the facts of the original claim. *In re Metro Transportation*, 117 B.R. 143, 147 (Bankr.E.D.Pa.1990); *In re Candy Braz*, 98 B.R. 375, 380 (Bankr.N. D.Ill.1988). Amendments filed after the claims bar date, as in the present case, are to be scrutinized closely to ensure that the amendment is genuine rather than the assertion ·of an entirely new claim. *Metro Transportation*, 117 B.R. at 147; *see International Horizons*, 751 F.2d at 1215. The deadlines for filing proofs of claims are to be strictly construed to ensure the efficient administration of bankruptcy cases and to provide all parties with finality. *Metro Transportation*, 117 B.R. at 148, *citing In re Pigott*, 684 F.2d 239 (3d Cir.1982); *see In re Vertientes, Ltd.*, 845 F.2d ·57, 60 (3d Cir.1988).

In this case, Mellon Bank sought to amend its proof of claim to change its status from that of an unsecured creditor to that of a priority claimant. Mellon Bank contends that the basis for the attempted amendment is that the claim it holds was acquired by assignment instead of by subrogation. Under 11 U.S.C. § 507(d), a claim acquired by subrogation is precluded from asserting priority status, while a claim acquired by assignment may obtain priority status. The trustee asserts that this change in status from unsecured to priority amounts to the filing of a new claim, and is therefore barred absent a showing of excusable neglect on the part of Mellon Bank. *See Vertientes*, 845 F.2d 57.

Although case law has generally held that a post-bar-date proof of claim seeking to merely increase the amount of a timely-filed claim is not the assertion of a new claim, *see, e.g., Candy Braz*, 98 B.R. at 381; *Hanscom Retail Foods*, 96 B.R. at 35, where a claimant attempts to change the nature of the proof of claim, such amendments are generally disallowed. *Metro Transportation*, 117 B.R. at 148; *see Candy Braz*, 98 B.R. at 375; *Hanscom Retail Foods*, 96 B.R. at 35; *In re Simms*, 40 B.R. 186, 189 (Bankr.N.D.Ga.1984). Amending a claim to change status from unsecured to sixth place priority changes the nature of the proof of claim and, therefore, must be disallowed. *See Metro Transportation*, 117 B.R. at 148. As the *Metro Transportation* Court stated:

> The nature of a priority claim is much different from that of a general unsecured claim. Reclassifying the claim as a priority claim impacts the debtor's Plan and the distributions to be paid to the other creditors under the Plan. This situation is therefore different from those in which amendments have been permitted to increase the amount of a claim when post-bar date events have resulted in a larger, but otherwise unchanged debt.

*Id.* Although this case was filed under Chapter 7 and an estate is to be liquidated, whereas in *Metro Transportation* the case was filed under Chapter 11 where there was a plan of reorganization, the *Metro Transportation* rationale remains apt. Reclassification of the claim would result in prejudicial alteration of the amounts recoverable by other creditors of the debtor.

As in *Metro Transportation*, Mellon Bank did not suggest that any post-bar-date event occurred which necessitated the reclassification of the claim, as opposed to the amount of the claim.[2] "If the Claim

---

2. When the court pressed Mellon Bank for the

reason behind its late filing, Mellon Bank stat-

deserved priority, it deserved it at the time that [it] filed its first proof of claim." *Id.; see also In re Pigott*, 684 F.2d 239 (3d Cir.1982). Mellon Bank's failure to timely file its proof of claim to request priority treatment was due to its own negligence. Mellon Bank was not misled by any action or inaction of another party. *See Metro Transportation*, 117 B.R. at 150. As stated in *In re Norris Green Co.*, 81 B.R. 103, 108 (Bankr.M.D.Fla.1987), "[w]here a litigant's own internal procedures are the cause of a failure to comply with proper legal procedures, courts should generally refuse to grant relief from the consequences of the lack of compliance." *Id.; see also In re Saltzmann*, 25 B.R. 125, 128 (Bankr.E.D.Wis.1982).

In addition to considering Mellon Bank's negligent activity, this Court must also determine the equitable impact on the debtor, the trustee, and other creditors. Viewing Mellon Bank's dilatory actions in light of these other parties, this Court finds that prejudice would result if Mellon Bank were permitted to alter its status from an unsecured creditor to that of a priority claimant. The first claim provided no notice to the bankruptcy court of the character of the claim as an assigned consumer claim. In addition, a new priority claim would have a more substantial, less favorable effect on the distribution of funds to other creditors than the general unsecured claim. Finally, if the amendment were to be allowed, the trustee would be forced to incur additional expenses and would have to spend excessive amounts of time and effort in filing an objection to Mellon Bank's amended proof of claim, resulting in a significant waste of estate assets.

Because this Court finds that the bankruptcy court properly determined that Mellon Bank's attempted amendment was in reality an attempt to file a new claim, the more narrow standard set forth in *Vertientes* applies. *Vertientes* requires a creditor filing an untimely proof of claim to show excusable neglect or to request an extension of time to file a new proof of claim before the originally prescribed time period had run out. *Vertientes*, 845 F.2d at 60. Mellon Bank has not argued excusable neglect, nor did it request an extension of time to file a new proof of claim. Considering all these factors in conjunction with the fact that, at both hearings the bankruptcy court offered Mellon Bank an opportunity to plead its case for amendment, and with the deference this Court must give to a bankruptcy court's determinations regarding such matters, this Court must affirm the bankruptcy court's denial of Mellon Bank's motion to amend its proof of claim.

An appropriate Order will be issued.

___

ed: "In the course of a typical Master Card Visa merchant bank dealing, you would typically have a figure which is chargebacks, but those chargebacks would derive from a number of potential situations. Only a subsequent analysis of the account would break it down into what they were for." (Tr. of hearing on motion to amend proof of claim at 10–11). This Court finds that such rationale is not sufficient justification for a late filing.