**In re William T. GARNER and Sara L. Garner, Debtors.**

**Bankruptcy No. B88–02518.**

United States Bankruptcy Court, N.D. Ohio.

April 6, 1990.

Ralph M. Klopp, Cleveland, Ohio, for debtors.

Richard J. French, Asst. U.S. Atty., Cleveland, Ohio, for I.R.S.

Eric Wasserman, Cleveland, Ohio, for Beneficial Mortg. Co.

## MEMORANDUM OF DECISION

DAVID F. SNOW, Bankruptcy Judge.

This memorandum considers the propriety of permitting the Internal Revenue Service (the "IRS") to amend its proof of claim after the expiration of the bar date to promote one of its claims from general unsecured to priority status. I sustained the Debtors' objection to the IRS amendment at a hearing on January 23, 1990. At that hearing counsel for the IRS advised that he might appeal the Court's ruling. I reserved the right to explain the basis for my decision in a written opinion if an appeal were taken.

The order reflecting the Court's decision was entered on February 15, 1990 (the "Order"). The Order was approved by the attorney for the Debtors, the Chapter 13 Standing Trustee, the Assistant United States Attorney representing the IRS and the attorney for Beneficial Mortgage Company, the holder of a second mortgage on Debtors' home ("Beneficial"), which had also objected to the IRS proposed amendment at the January 23 hearing. Paragraph 1.c. of the Order provided that the IRS amended claim "is allowed in part and disallowed in part as follows: ... (c) The sum of $4,686.70 is allowed as an UNSECURED GENERAL claim." On February 26, 1990 the IRS filed with the district court a notice appealing this portion of the Order and asserting that the $4,686.70 should have been accorded priority status.

■ Although I am unaware of any explicit procedure authorizing the trial judge to write an opinion after notice that his judgment has been appealed, the manner in which chapter 13 cases are administered and contested issues in those cases decided, makes this procedure particularly useful, at least where so doing will not delay or impede the appeal or impose upon any party an element of unfair surprise inconsistent with the adversary process. The parties have been advised of my intent to write this memorandum and it does not appear that this memorandum will delay or in any way impede the appeal.

The Debtors' objection to the IRS amended claim was only one of about 124 matters heard on the Court's January 23 chapter 13 docket. It is critical to the administration of chapter 13 cases that disputes be resolved as expeditiously and summarily as possible. The typical chapter 13 case is filed to stave off foreclosure of his home by a debtor who is at the low end of the income scale and often at the brink of poverty. The chapter 13 process usually requires the debtor and/or his lawyer to schedule his debts, to project his income and obligations, to develop a reorganization plan and to attend several hearings prior to

**354**

the court's confirmation of his plan. For these efforts debtors' counsel were at the time this plan was confirmed typically allowed less than $750 for guiding the plan to confirmation. Where, as in this case, there are serious post confirmation problems, the debtor's ability to compensate his lawyer, at least fully, is problematic. From the creditor's perspective, the amounts at stake in the typical chapter 13 case require that disputes be resolved quickly and efficiently.

These constraints limit the amount of time and effort which counsel can as a practical matter devote to disputed matters. The vast majority of issues are settled. Of those that are not, few involve evidentiary hearings; most, as in this case, are submitted on a combination of the parties' pleadings and counsels' statements to the Court and appeals are rare. This means that the record in chapter 13 disputes is often sparse and unfocused and that the legal analysis, at least as reflected in the record, is often limited and perfunctory. Where an appeal is taken, this makes it particularly useful for the court which decided the matter to explain the basis for its decisions to the court hearing the appeal. Notwithstanding the foregoing, it should be noted that counsel for the parties did a good job of briefing this matter.

*Background*

The Debtors filed their case on July 8, 1988. That filing included a list of the Debtors' creditors including the IRS, schedules of the Debtors' income and obligations and the Debtors' proposed plan of reorganization. As originally filed, Debtors' plan provided that the IRS claim for 1984 federal income tax would be paid in full as a priority claim. Subsequently, Debtors' proposed plan was modified to provide the IRS $80 monthly as a priority claim without describing the IRS taxes to which the claim related. These modifications were made at the request of the Chapter 13 Trustee and to meet the objection filed by Beneficial. Debtors amended plan came on for hearing on October 4, 1988 and was confirmed without objection.

The IRS filed its original proof of claim on November 14, 1988, three days before the November 17 bar date. According to that proof of claim the Debtors owed the IRS $4,505.14 as priority claims for 1985 and 1986 taxes, interest and penalties and $4,768.99 as general unsecured claims for 1984 income taxes, interest and penalties. The order confirming the plan was entered November 29, 1988. Pursuant to the confirmed plan, the Debtors committed to pay the Chapter 13 Trustee $288.50 biweekly for 60 months, the maximum period permitted under section 1322(c) of the Bankruptcy Code. But confirmation did not end Debtors' problems.

By an order entered November 22, 1988 the Debtors had agreed with their first mortgagee, Third Federal Savings and Loan Association ("Third Federal") that Third Federal would be granted relief from the automatic stay to foreclose its mortgage on Debtors' home if Debtors fell two months behind in their regular mortgage payments. On September 19, 1989, the Chapter 13 Trustee filed a motion to dismiss Debtors' case because Third Federal had filed a secured proof of claim for some $5,000 more than had been scheduled by the Debtors with the result that the Debtors' plan would extend beyond the permissible 60-month period and would, therefore, be rendered infeasible. This filing prompted Debtors to object to the Third Federal claim and to file an amendment to their confirmed plan in order to avoid dismissal of their case. Ultimately the Court approved the amendment, which reduced the payment to unsecured creditors from sixty percent to six percent.

The IRS never formally objected to Debtors' amendment to its confirmed plan, even though it would continue to receive under the amended plan $80 per month—less than half of the amount required if its amended claim were allowed. In any event Debtors' motion to amend its confirmed plan apparently prompted the IRS to reexamine its original proof of claim and to conclude that it had improperly characterized its 1984 claims as general unsecured when in fact they were entitled to priority status. The IRS filed its amended proof of claim with

the Court on November 7, 1989, 13 months after Debtors' plan was confirmed and about a year after the bar date and the date on which the IRS original proof of claim had been filed.

The Debtors' dispute with the IRS on its amended claim surfaced first on the Court's November 21, 1989 chapter 13 docket at a hearing on the Trustee's motion to dismiss Debtors' case. The IRS and the Debtors were instructed to advise the Court whether a factual hearing would be necessary to resolve their dispute or whether the matter could be decided on briefs. The parties reported at the Court's January 9, 1990 chapter 13 docket that they would brief the issues and were given a briefing schedule; the matter was adjourned for hearing on the Court's January 23 chapter 13 docket.

The IRS' amended claim involved not only the change in the status of its 1984 claims from general unsecured to priority but changes to its claims for other years as well. These other changes were argued at the January 23 hearing. However, I ruled only on the IRS requested change in status for its 1984 claims since it appeared that the other changes requested by the IRS could be resolved by the parties. The parties did in fact resolve these other issues as reflected in the Order. This leaves at issue only $4,684.62 relating to 1984 taxes and interest.[1]

### Findings of Fact

Although there were a number of factual matters potentially at issue, neither the IRS nor the Debtors have disputed any factual allegation of the other and the Court accepts those undisputed allegations. Based upon the record in the case, the pleadings filed by the parties and the statements of counsel, the Court makes the following findings.

The IRS was given due notice of Debtors' case, of the Section 341 creditors meeting, of the November 17, 1988 bar date and of the confirmation hearing on Debtors'

plan. The IRS acknowledges that it made a mistake in its original proof of claim. The original claim showed June 15, 1985 as the assessment date for 1984 taxes which put them outside the time to qualify for priority status. On reexamination the IRS concluded that the proper assessment date was February 8, 1988, since Debtors' 1984 taxes were apparently the subject of an IRS audit. Debtors do not dispute this assessment date nor that the 1984 claims, if timely filed, would have qualified for priority status.

The IRS does not explain the reason for its mistake. There is nothing in the record to indicate, nor does the IRS allege, that the Debtors were responsible for the IRS' mistake. The IRS suggests only that the Debtors should have been aware of the possibility of the reclassification because Debtors knew that 1984 taxes were audited and that this would postpone the assessment date. The IRS did not argue that the Debtors should be bound by their characterization of 1984 taxes as priority taxes in their original schedules and plan.

It appears from the statements of counsel and from the history of this case that allowance of the IRS claims would render Debtors' plan infeasible and in all probability result in dismissal of the case. By the time of the January 23 hearing the case had used up about 18 of the 60 months permitted by section 1322(c) of the Bankruptcy Code. Payment of the IRS claim over the then remaining 42 months would have required payment to the IRS of more than an additional $100 per month. Since Debtors listed less than $10,000 unsecured claims in their schedules, the additional funds could not be found by eliminating the six percent dividend to unsecured creditors. Although counsel for the Chapter 13 Trustee indicated that Debtors' child care expense had been reduced, it did not appear that Debtors could come up with the funds necessary to pay the IRS' amended claim. The IRS did not dispute the fact that allowance of its amended claim would render the

---

1. For reasons unknown to the Court, the parties agreed that the $146.32 in penalties associated with the 1984 taxes should be allowed as a priority claim, reducing the amount in dispute from $4,830.94 to $4,684.62.

plan infeasible or result in dismissal of the case.

Counsel for Beneficial stated that Beneficial had relied upon the $80 per month allocated to the IRS in withdrawing its objection to the confirmation of the Debtors' plan. The Order amended the plan to provide Beneficial a fixed monthly payment of $150 on its secured claim. If the $80 payment to the IRS were to be increased, it would reduce the amount available under the plan for payment to Beneficial as second mortgagee. Counsel for Beneficial said that if the amended claim were allowed he would probably file a motion for relief from stay, which could result in Debtors' loss of their home.

Provided that the IRS amendment is disallowed, it appears that the Debtors will continue to fund their plan, that their creditors will continue to receive payments thereunder and that Debtors will obtain their discharge after completion of payments under the plan.

### Legal Analysis

Although there are a substantial number of cases which deal with attempts by the IRS to amend its proofs of claim after the bar date, none was cited which deals with upgrading a claim from general unsecured to priority status, nor am I aware of such a case. The courts have generally endorsed the proposition that "amendment to a claim is freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim." *In re International Horizons, Inc.,* 751 F.2d 1213, 1216 (11th Cir.1985). But this precept is useful primarily where the creditor appears to be using the amendment to bootstrap allowance of a new claim by appending it to a different claim filed prior to the bar date.

In its original claim the IRS pegged 1984 taxes, penalties and interest in the amount of $4,768.99. The amended claim showed a total for these items of $4,830.99, close enough so that the difference is not material. But this leaves open the question of whether the reclassification of a claim from general unsecured to priority after the bar date should be permitted. To answer this question the IRS relies primarily upon *In re Midwest Teleproductions Co., Inc.,* 69 B.R. 675 (Bankr.N.D. Ohio 1987). But the IRS' reliance on that case is misplaced.

The *Midwest* case involved an effort by the IRS to use its pre bar date filing to justify an amendment which introduced claims for FUTA taxes whereas its original proof of claim had involved only FICA taxes. The court in that case found, however, that the FUTA claims shared a sufficient generic basis with the FICA claims so as not to preclude the amendment on the ground that it impermissibly introduced an altogether new claim. But that finding was only a necessary, not a sufficient, condition for allowing the amendment. The court in *Midwest* went on to consider whether it would be equitable to allow the amendment and concluded that under the "unique" facts of that case that it would be.

Many of the amendment cases, as typified by *Midwest,* had to determine at the threshold whether the amended claim is so different from the original claim as to be precluded by the passage of the bar date, whatever the equities. The "liberal" line of cases, which the IRS endorses and which is exemplified by *Midwest,* has allowed amended claims which bore a quite tenuous relationship to the original claim. The "conservative" line of cases has been less generous in finding such relationships because of the perceived need for finality in the administration of bankruptcy cases. *See Norris Grain Company v. United States (In re Norris Grain Company),* 81 B.R. 103 (Bankr.M.D.Fla.1987) and *In re International Horizons, Inc., supra.*

But this "liberal" "conservative" split has nothing to do with the resolution of this case. Where the proposed amendment has involved something not included in the original claim, the courts, virtually without exception, have gone on to determine whether it was fair under the circumstances of the case to allow the amendment. This equitable focus was nicely expressed

in a bankruptcy case decided by the Sixth Circuit over 40 years ago:

> Amendments of proofs of claims in bankruptcy to correct defects and mistakes are liberally allowed where, no fraud appearing, the mistake was made through ignorance of law or fact and substantial justice requires that the amendment should be allowed. In *Szatkowski v. Meade Tool & Die Co. (In re Meade Tool & Die Co.)*, 164 F.2d 228, 230 (6th Cir.1947).

The district court in *Miss Glamour Coat Co.*, 80–2 U.S.T.C. (CCH) ¶ 9737, 46 A.F.T. R.2d (P–H) ¶ 6083, 1980 WL 1668 (S.D.N.Y. October 12, 1980), posed several questions to guide this determination.[2] Most amendment cases decided since *Miss Glamour Coat,* have cited that case and have tested the proposed amendment against such considerations as the culpability of the creditor for the original deficient filing and the adverse impact on the debtor and other parties if the amendment were allowed. This weighing of the equities has typically been assigned to the discretion of the trial court. *In re International Horizons, Inc., supra,* at 1219; *see also In re Candy Braz, Inc.,* 98 B.R. 375, 380 (Bankr.N.D.Ill.1988). The equities in this case appear clearly to require denial of the amendment.

The adverse impact on the Debtors is clear and dramatic. Allowance of the amended claim would result in the infeasibility of the plan and in all probability the dismissal of the case. In that event it would deprive the Debtors of the opportunity to proceed with a plan confirmed by the Court on which Debtors have paid over $570 a month since August 1988, at least $550 in attorneys fees as well as substantial payments outside the plan to its mortgagee. Allowance of the amended claim would deprive secured creditors of a payment arrangement agreed to by them and would deprive unsecured creditors of the opportunity to realize even a small portion of their claims against the debtor. No case was discovered which permitted an amendment which would produce such baleful results.

In *In re Sapienza,* 27 B.R. 526 (Bankr. W.D.N.Y.1983) the case most nearly on point, the court refused to allow an amended claim after substantial payments had been made under the chapter 13 plan. The court said:

> ... [T]he IRS having filed a claim for $2,517.09, having accepted payments on it for a year after notice fixing the amount of their allowed claim before their revision of their claim, and the debtor having expended large amounts of money in putting his plan into effect, and it now being the time that other creditors receive some payment under the plan, it is too late for IRS to claim that equity requires a change in the amount of their claim because they were dilatory in completing their audit.

27 B.R. at 528–29. *See also In re Hebert,* 61 B.R. 44 (Bankr.S.D.La.1986).

In *Midwest,* by contrast, the court found that allowing the amended claim would not have a material impact on the case and that there had not been reliance on the IRS claim as originally filed. *Midwest* was a chapter 11 case and the court stressed that the debtor had not filed a disclosure statement at the time the amended claim was filed (or apparently allowed).

None of the other cases cited by the IRS support allowing an amendment which would so adversely affect the debtor or other parties. In *United States v. Vlavianos (In re Vlavianos),* 71 B.R. 789 (Bankr. W.D.Va.1986) the court held that the IRS could not amend its claim so as to impose liability on a debtor who had made all payments required by his chapter 13 plan. Although the court did suggest in dicta that the amendment might have been allowed

---

**2.** The questions suggested in *Miss Glamour Coat* were:

   1. Did the debtor and creditors rely on the earlier proof of claim or have reason to know that subsequent proofs of claim would be filed?

   2. Will other creditors receive a windfall if the amendment is disallowed?

   3. Did the IRS intentionally or negligently delay in filing its proof of claim?

   4. Was the IRS justified in failing to request an extension of the bar date?

   5. Does equity require the consideration of other factors?

had the payments not been completed, it also emphasized that:

> This is not to say that an amendment to a proof of claim is always permitted. To the contrary, an amendment should not be allowed if it would cause undue prejudice to an opposing party.

71 B.R. at 794.

In *Norris Grain Company, supra,* in disallowing the IRS amendment the bankruptcy court found that the IRS' original proof of claim "did not provide notice to the court or any interested party that a subsequent claim for taxes would be forthcoming." 81 B.R. at 107. The court also stressed that the IRS was at fault in not filing its claim before the bar date. ·

The IRS provided no explanation either for its erroneous original claim or for its delay in seeking amendment. On the record presented I can only ascribe the error to IRS negligence. Moreover, there is nothing in the record to suggest that any action or inaction by the Debtors contributed to the IRS error.

The IRS argues only that the Debtors were aware that the 1984 taxes were subject to audit and that the audit postponed the assessment to a date which qualified 1984 taxes, penalties and assessments for priority status. I find this argument unpersuasive. It would not only require debtors to police IRS' claims but would impose upon them an unrealistic level of sophistication in complicated tax matters, while relieving the IRS from responsibility in the precise area of its expertise. There is nothing in the record in this case which suggested that the Debtors or their counsel had any such expertise.

The IRS did not argue that the IRS' mistake should be excused because the Debtors originally classified 1984 taxes as a priority claim, and there is no evidence in the record which indicates that the Debtors knew of the IRS' mistake or that the IRS would assert additional priority claims. The Debtors' plan as confirmed provided the IRS a monthly payment of $80, which was consistent both with their schedules and with the IRS original claim. The fact that the original IRS claim, while nearly doubling the taxes shown in Debtors'

schedules, showed approximately the same amount of taxes having priority status would reinforce the conviction that the $80 monthly payment provided in Debtors' confirmed plan was adequate and that IRS, having examined the matter, had made a correct and definitive determination of its claims. There is therefore no credible evidence that Debtors knew of the IRS' mistake or that they would have to cope with additional priority claims. By contrast, the court in *Midwest* found that the debtor was at the time of the original filing and thereafter negotiating with the IRS on the FUTA tax asserted in the IRS amended claim and that the debtor was to a significant extent responsible for the IRS failure to file the FUTA tax claim on a timely basis.

Under the circumstances of this chapter 13 case the IRS, not the Debtors or their other creditors, must bear the burden of its own negligence. The case has proceeded too long and too much has been paid into the plan of reorganization to permit the IRS at this point to cause the case to be dismissed and the Debtors denied their possibility of discharge because of the IRS's own unexplained and unexcused error in properly and timely asserting its claims. To permit such a result would violate the intent of chapter 13 to protect the integrity of chapter 13 plans after confirmation.

Section 1327(a) of the Code provides that "the provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan and whether or not such creditor has objected to, has accepted or has rejected the plan." Section 1330 of the Bankruptcy Code provides for revocation of a confirmed plan only within 180 days and only if the order confirming the plan was procured by fraud. In this case there is no suggestion that the Debtors have acted in bad faith, let alone fraudulently, and no justification for permitting the IRS to claim priority status for its 1984 claims at the cost of Debtors' chapter 13 reorganization.