**In re Timothy P. COPELAND, Debtor.**

**In re Alberta Lee RAPP, Debtor.**

**Bankruptcy Nos. SL91–86479, SL92–82175.**

United States Bankruptcy Court, W.D. Michigan, S.D.

May 26, 1993.

---

Debt Relief Legal Clinic of Michigan, P.C., (Gregory W. Smith, argued), Lansing, MI, for debtors Timothy P. Copeland and Alberta Lee Rapp and in pro per.

Daniel J. Casamatta, Grand Rapids, MI, Asst. U.S. Trustee.

John Bolenbaugh, Lansing, MI, Standing Chapter 13 Trustee.

## CONSOLIDATED SUPPLEMENTAL OPINION ALLOWING CHAPTER 13 ATTORNEYS' FEES IN A REDUCED AMOUNT

JO ANN C. STEVENSON, Bankruptcy Judge.

### I. Introduction.

This consolidated opinion is issued to supplement two attorney's fee decisions entered in the above two chapter 13 cases. The *Rapp* order was entered following the April 7, 1993 hearing held on the U.S. Trustee's objection to fees. The *Copeland* order was issued upon counsel's submission in the ordinary course of his third request for additional attorney's fees. No hearing was scheduled in *Copeland* as none was requested.

Because there are overlapping issues of law and both cases deal with the allowance of chapter 13 debtor's attorney's fees requested by the same law firm, Debt Relief Legal Clinic ("the Firm"), these cases have been consolidated for the limited purpose of issuing this opinion. FED.R.BANKR.P. 7042; FED.R.CIV.P. 42(a). No new or unique issue of law is raised here; rather this consolidated opinion is issued to explain in greater detail the court's methodology in reviewing fee applications in accord with 11 U.S.C. § 330(a)'s mandate that this court award "reasonable compensation for actual and necessary work." Despite repeated explanations issued in both bench and written opinions regarding chapter 13 fees, this issue continues to cause problems vis-à-vis a handful of law firms in this District. As a result, the court's statements in support of its respective decisions in these cases were to an extent a culmination of legal conclusions expressed to counsel many times before. While we could rely on both the transcript of the court's April 7, 1993 *Rapp* bench opinion as well as the court's April 8, 1993 letter to counsel in *Copeland* we believe that the reviewing court should have the benefit of the same background in these fee matters that counsel has had.

Although it may be somewhat unusual to issue a written opinion after the filing of an appeal, this procedure is not unique. Faced with a similar procedural problem in *In re Garner,* 113 B.R. 352, 353 (Bankr. N.D.Ohio 1990), the Honorable David F. Snow opined,

Although I am unaware of any explicit procedure authorizing the trial judge to write an opinion after notice that his judgment has been appealed, the manner in which chapter 13 cases are adminis

tered and contested issues in those cases decided makes this procedure particularly useful, at least where so doing will not delay or impede the appeal or impose upon any party an element of unfair surprise inconsistent with the adversary process. The parties have been advised of my intent to write this memorandum and it does not appear that this memorandum will delay or in any way impede the appeal.

Neither does it appear that this opinion will impede the appeals in these pending cases. As of this writing, the record in this court had not yet been transmitted to the District Court. This consolidated opinion should not "unfairly surprise" counsel since on more than one occasion the court has found it necessary to explain, both in writing and from the bench, the manner in which this court decides and thus awards reasonable compensation.

### II. Factual Background.

In *Copeland* the Debt Relief Legal Clinic requested fees of $1,000 at confirmation of which $500 was awarded at that time. Counsel subsequently requested an additional $470. The original order in the file indicates that only $250 of this amount was awarded. However, it appears that through a clerical error in the court clerk's office the true copy returned to the Firm for service did not reflect the reduction in fees. Therefore, the chapter 13 Trustee paid the Firm the full $470 requested. The court has taken no action to rectify this situation nor does it intend to do so, given subsequent events. A copy of the Firm's retainer agreement was attached to the petition and schedules filed in this case in which the debtor agreed to pay the Firm for attorney services at a billable rate of $100 per hour. As matters stand the Firm has been allowed and has been paid $970.00.

On April 1, 1993 the Firm filed a third fee application seeking an additional $370 in fees. No objections were filed to the April 1, 1993 application; therefore no hearing was scheduled. The fee application with attached itemization and the bankruptcy court file were examined by the court and the proposed fee order requesting additional fees was denied in the court's April 8, 1993 order. Accompanying that Order was the court's April 8, 1993 letter explaining the reason for the disallowance of the fees. That letter relied upon counsel's representation that a total of $970, rather than $750, had been allowed to that point in time. Interestingly enough, this court concluded that an award of total fees in the amount of $750 would have been appropriate:

> Pursuant to the new guidelines which the Chapter 13 Trustees will be employing in their review of Debtor's attorney fees, and consistent with the standard that attorney fees be reasonable, the legal fees for this case should have been no more than $750. Having already received $970, however, you are not entitled to even more fees.

April 8, 1993 letter to Attorney Greg Smith. The guidelines used by the chapter 13 trustees essentially embody the "lodestar" factors discussed below. An appropriate order was docketed on April 9, 1993. On April 19, 1993, the Firm filed its notice of appeal with this court.

The fee request in *Rapp* arose under somewhat different circumstances. On June 24, 1992 the order confirming the chapter 13 plan and providing for $1,000 in fees was signed. As is customary in this District, no supporting itemization was provided, although a copy of the Firm's retainer agreement was also attached to the petition and schedules filed in this case. In this matter, however, the billable rate was $125 per hour. On March 8, 1993 the Firm requested additional fees in the amount of $659.78. Objections to this request were filed by both Creditor Chrysler Credit Corporation and the Office of the U.S. Trustee. By the time of the April 7 hearing Chrysler Credit's objections had been resolved, leaving only those objections filed by the U.S. Trustee. Arguments were made by Assistant U.S. Trustee Casamatta and Mr. Smith appearing on behalf of the Firm. The Firm filed no response to the U.S. Trustee's objections to its fees and cited no law in support of its argument that its fees should

be awarded in full. The Firm's position appears to be that it is entitled to be compensated at an hourly rate of $125 for all work done, regardless of the nature of that work or its benefit to the estate. At the conclusion of the April 7 hearing the court made a finding that based upon the court's file, the itemization attached to Debt Relief Legal Clinic's fee application, the arguments presented and considered, and this court's familiarity with and understanding of chapter 13 work, pursuant to *In re Boddy*, 950 F.2d 334 (6th Cir.1991), reasonable compensation for the legal work actually performed in *Rapp* would be $1200. This figure was calculated by determining that 9.6 hours of legal work was reasonably required, compensated at an hourly rate of $125. An order so providing was entered on April 8, 1993. No brief or memorandum was filed before, or for that matter, after the ruling, nor was a motion to reconsider citing case law, Code section or Rules filed.

### III. Jurisdiction.

This Court has jurisdiction over the parties and subject matter of these actions pursuant to 28 U.S.C. § 1334. These are core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(A).

### IV. Applicable Law.

■ When examining attorneys' fees 11 U.S.C. § 330, *Compensation · of Officers*, governs. That Code section states:

(a) After notice to any parties in interest and to the United States trustee and a hearing, subject to sections 326, 328 and 329 of this title, the Court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person,

or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.[1]

■ The court has an obligation to examine the propriety of fees and expenses requested even if no objections are raised. *In re Bush*, 131 B.R. 364 (Bankr.W.D.Mich. 1991); and *In re Mayes*, 101 B.R. 494 (Bankr.W.D.Mich.1988). This is neither a new nor novel concept. *See Jordan v. Mark IV Hair Styles, Inc.*, 806 F.2d 695 (6th Cir.1986) (fees in a civil rights class action); *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 831 (Bankr.D.Vt.1987); *In re Evans Products Co.*, 69 B.R. 68, 69 (Bankr. S.D.Fla.1986); *In re NRG Resources, Inc.*, 64 B.R. 643, 650 (W.D.La.1986); *In re Wilson Foods Corp.*, 36 B.R. 317, 320 (Bankr. W.D.Okla.1984); and *In re Hamilton Hardware Co., Inc.*, 11 B.R. 326, 329 (Bankr.E.D.Mich.1981).

As the Honorable Robert Holmes Bell recognized in *Solomon v. Wein (In re Huhn)*, 145 B.R. 872 (W.D.Mich.1992):

The bankruptcy court must make an independent review of the fee petition. The court has the responsibility for avoiding waste of estate assets and preventing overreaching by attorneys in their attempts to be paid attorneys' fee from the estate. *In re Riker Industries, Inc.*, 122 B.R. 964, 970 (Bankr.N.D.Ohio 1990); *In re Kroh Bros.*, 105 B.R. [515] at 520 [ (Bankr.W.D.Mo.1989) ].

■ This obligation is especially important in a chapter 13 case where a debtor has neither inclination nor motivation to object to attorney's fees. Once disposable

---

1. Although § 330(a) permits the allowance of fees only after notice and hearing it is the practice of the bankruptcy court to permit fee requests to be made on a "notice and opportunity to object" basis. The application for fees is typically submitted with a proposed order and served by the applicant upon all interested par-

ties. If there is no objection within a set period of time, the applicant so certifies and the order is then submitted with the application to the judge for review. In the event that an objection is made, a hearing is scheduled by the court. The use of this procedural device is permitted under 11 U.S.C. § 102(1).

income has been determined, it generally makes no difference to the debtor whether that money is distributed as fees or a larger dividend is paid to creditors. In either case, the money is not available to the debtor.

For several reasons the motivation of creditors to object to chapter 13 fees is minimal. Judge Scholl said it best in *In re Patronek*, 121 B.R. 728, 731 (Bankr. E.D.Pa.1990):

> Although, in a general sense, that portion of an excessive fee paid through a Chapter 13 plan comes directly out of creditors' pockets, the amount lost by any one creditor is simply too small to merit the expense and attention of a court filing. We believe that small creditors have the right to assume that a judge will make some effort to preserve the integrity of the Chapter 13 process by not merely signing off on fee applications by rote.

In awarding fees the court is guided by several tenets. The first is the language of 11 U.S.C. § 330(a) providing for "reasonable compensation for actual and necessary work." As the United States Supreme Court has instructed in *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989), "the fundamental canon [of] statutory interpretation begins with the language of the statute itself."

■ The Code has rejected the concept that notions of economy or economy of administration is a factor in awarding fees. *In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir.1985). This concept, however, has been replaced by § 330(a)'s requirement that the fees be "reasonable." As a starting point, the court must use the lodestar method in determining whether the fees requested are reasonable. *In re Boddy*, 950 F.2d 334 (6th Cir.1991). That is, the bankruptcy court is to multiply the attorney's reasonable hourly rate by the number of hours reasonably expended performing necessary legal work. However, the calculation of a reasonable fee need not be limited to determining a billing rate and number of hours:

The bankruptcy court may also exercise its discretion to consider other factors such as the novelty and difficulty of the issues, the special skills of counsel, the results obtained, and whether the fee awarded is commensurate with fees for similar professional services in nonbankruptcy cases in the local area.

*Id.* at 338.

■ This language found application in *In re Malewicki*, 142 B.R. 353, 355 (Bankr. D.Neb.1992). Citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir.1974), the in *Malewicki* court identified at least twelve factors which may be considered in determining what reasonable compensation is:

1. The time and labor required;
2. The novelty and difficulty of the questions;
3. The skill requisite to perform the legal service properly;
4. The preclusion of other employment due to the acceptance of the case;
5. The customary fee;
6. Whether the fee is fixed or contingent;
7. Time limitations imposed by the client or circumstances;
8. The amount involved and the results obtained;
9. The experience, reputation, and ability of the attorneys;
10. The "undesirability" of the case;
11. The nature and length of the professional relationship with the client; and
12. Awards in similar cases.

Although the court noted that there was some controversy as to whether the so called "*Johnson*" factors should be considered in determining the lodestar multiples or whether they should be used to make adjustments to the lodestar product, this appears to be largely a matter of semantics. In either case, these factors must be considered.

■ In *In re Atwell*, 148 B.R. 483 (Bankr.W.D.Ky.1993) the court reviewed the *Johnson* factors after it had completed

its lodestar analysis. The *Atwell* court characterized the *Johnson* factors as relating to "global" adjustments to the lodestar result rather than incremental adjustments to the lodestar multiples. However, in conducting its lodestar analysis that court considered exactly the kinds of issues raised in *Johnson.* Perhaps the most important contribution of *Atwell* is its emphasis on the exercise of "billing judgment" by attorneys:

> In the real world, most law firms make adjustments to their bills to their non-bankrupt clients to eliminate unproductive time or to reduce hours on productive projects where the total amount billed would be unreasonable in relation to the economic value of the matter in question.

*Id.* at 490. The court made the same point as to the billing rate charged by the attorney.

■ Equally important to determining the reasonable fee for the work performed is determining what truly constitutes professional services. The work for which lawyers receive compensation must be legal, not ministerial or clerical. *In re Taylor,* 66 B.R. 390, 392 (Bankr.W.D.Pa.1986); *In re Vlachos,* 61 B.R. 473, 479 (Bankr. S.D.Ohio 1986).

■ Of the *Johnson* factors, perhaps the most important in chapter 13 is "the amount involved and the results obtained." The work performed must be evaluated in terms of benefit to the estate. *In re Roger J. Au & Son, Inc.,* 114 B.R. 482 (Bankr. N.D.Ohio 1990); *In re Oakes,* 135 B.R. 511 (Bankr.N.D. Ohio 1991); *In re James Contracting Group, Inc.,* 120 B.R. 868 (Bankr. N.D.Ohio 1990). This is an area of law where the practice is for the most part routine and the dollars involved are consistently few. As a result the efficiency of counsel is of paramount importance.

■ The applicant bears the burden of showing that the fees requested are reasonable. *See Continental Ill. Nat. Bank*

& *Trust Co. of Chicago v. Charles N. Wooten, Ltd. (In re Evangeline Refining Co.),* 890 F.2d 1312, 1326 (5th Cir.1989) ("The applicant bears the burden of proof in a fee application case."); *Brake v. Tavormina (In re Beverly Mfg. Corp.),* 841 F.2d 365 (11th Cir.1988); *Neville v. Eufaula Bank & Trust Co. (In re U.S. Golf Corp.),* 639 F.2d 1197, 1207 (5th Cir.1981).

■ The bankruptcy court can rely on its own experience and knowledge as to what constitutes reasonable attorney's fees. *In re WHET, Inc.,* 61 B.R. 709 (Bankr.D.Mass.1986). In this particular case that experience and knowledge has been garnered from the 1,524 pending chapter 13 cases currently assigned to this judge and the uncountable number of cases heard since this judge took the bench some six years ago.

To aid in reviewing the fee applications submitted and thus determining whether the fees requested fall within the ambit of § 330(a), the bankruptcy judges of the Western District of Michigan published a "Memorandum Regarding Allowance of Compensation and Reimbursement of Expenses for Court–Appointed Professionals" (the "Fee Guidelines Memo") on August 2, 1989. The Fee Guidelines Memo is a procedural device designed to assure the court that it has the information necessary to discharge its duties under § 330. Necessarily it is anticipated that whenever attorney's fees are requested the supporting documentation and itemization will comport with the Fee Guidelines Memo.[2]

### V. Discussion.

■ The procedure by which this court awards chapter 13 attorneys fees, while not difficult, is somewhat time-consuming. Generally, the first, and often the only, request for fees comes before the court as part of the proposed form Order confirming the chapter 13 in which the fees are sought. The fee language contained in both the *Copeland* and *Rapp* cases states as follows:

---

2. A copy of the Fee Guidelines Memo is attached as Exhibit 8 to the March 1, 1993 Local Bankruptcy Rules of the United States Bankruptcy Court for the Western District of Michigan.

3. DEBT RELIEF LEGAL CLINIC, the attorney for the Debtor(s) shall be allowed compensation in the total amount of $[800.00 in *Copeland* and $1,000.00 in *Rapp* ] of which $[200.00 in *Copeland* and $500.00 in *Rapp* ] was paid prior to filing, leaving a balance of $[300.00 in *Copeland* and $500.00 in *Rapp* ] to be paid by the Trustee as an administrative expense of this case.[3]

The court reviews every chapter 13 file prior to confirmation to ascertain if the proposed plan is workable and the attorney's fees requested meet § 330's requirement of "reasonable compensation for actual and necessary services." The Western District of Michigan's Local Bankruptcy Rule 14 as well as this District's practice does not require that initial requests for chapter 13 attorneys fees up to $1,000 be accompanied by supporting itemization. Unfortunately and despite this court's repeated pronouncements both oral and written to the contrary, *see In re Bush*, 131 B.R. 364, 367 (Bankr.W.D.Mich.1991), this has resulted in the misguided notion that an attorney may receive compensation of $1,000 for filing a chapter 13 petition regardless of the quality or quantity of legal work involved. A number of lawyers, the Debt Relief Legal Clinic among them, have adopted a practice of requesting $1,000 in fees in virtually every case filed.

 In order to make what must at best be a preliminary assessment on the reasonableness of the fees requested, the number, type and complexity of pleadings contained in the debtor's court file, the number, type and amount of the debtor's creditors, and the debtor's net monthly income are reviewed. Based on this information the court determines what it believes to be reasonable compensation. Because the confirmation hearing is more often than not an uncontested *pro forma* proceeding handled by the chapter 13 Trustee, neither the debtor nor his or her counsel is

likely to appear. When counsel does appear and the court is presented with the confirmation order seeking an amount which does not seem warranted by the court's previous review of the file, counsel is typically asked for an explanation of what factors warrant the fees requested. Fees are then awarded in accord with § 330(a) and this court's understanding of *Boddy's* direction of application of the lodestar method.

 Necessarily that part of the confirmation order awarding fees is interlocutory and not final. This is generally true of interim compensation awards. *Boddy*, 950 F.2d at 336 (*citing In re Stable Mews Associates*, 778 F.2d 121, 122–123 (2nd Cir.1985); *In re Four Seas Center, Ltd.*, 754 F.2d 1416, 1419 (9th Cir.1985); and *In re Callister*, 673 F.2d 305, 307 (10th Cir.1982)). *Boddy* goes on to state that a fee award becomes final only when it is no longer subject to modification by the court. *Id.* In proceedings before this court, however, attorneys are given the option of seeking additional fees by application postconfirmation if they are dissatisfied with the amount allowed. At the point where the attorneys fees already awarded plus the additional fees requested exceed $1,000 counsel must submit itemization in support of the total fees, both those awarded and the additional fees requested. Assisted by this itemization, the court can then better determine whether the requested fees comprise reasonable compensation for the legal work performed.

The *Copeland* debtor had a total of three creditors, two secured (a home mortgage and a purchase money security interest in a 1989 vehicle) and an unsecured debt of $452 for dental services. There was no other debt such as taxes or additional unsecured debt. Assuming it was even appropriate to file a chapter 13, the secured debts would have to be paid in full by the plan. This left the $452 unsecured debt.[4]

---

**3.** In virtually every instance, including these two cases, although the form Order Confirming Plan and Approving Attorney's Fees is prepared by the chapter 13 Trustee, not debtor's counsel,

it is the debtor's counsel who provides the information as to the dollars requested.

**4.** Since the filing of the chapter 13 did not relieve the Debtor from paying his two secured

A review of the court's file revealed that the only legal work performed was the filing of the petition and plan, and the negotiation of an adequate protection agreement with GMAC. It is difficult to imagine a more simple and routine case. Based on the amount of legal work required and the nature of this chapter 13, under the new guidelines which the Western District of Michigan chapter 13 trustees should now be using in reviewing fee applications, it is highly likely that this case would be one for which the chapter 13 Trustee would have recommended a fee in the $500–$750 range.

The *Rapp* debtor owed secured creditor Chrysler Credit Corporation for purchase money debts on two vehicles (a 1990 Dodge Ram and a 1989 Dodge Daytona). The Debtor also owed land contract vendor Roger J. Sackett on a parcel of property which consisted of a residence and six unit motel. According to the schedules that debt was approximately $4,800 in arrears when the Debtor filed chapter 13. The only other claims were those of unsecured creditors totalling $4,464. Although counsel may have referred to this as a "business" case a review of the itemization attached to the fee application as well as the pleadings filed revealed no indicia of the additional work typically required in a chapter 13 business filing. The legal work involved consisted of the filing of the chapter 13 schedules, plan and amendment thereto, the negotiation of an adequate protection agreement with Chrysler Credit and the negotiation of payment of the arrearage owed the land contract vendor.

Against this background we review compliance of the *Copeland* and *Rapp* fee applications with the Fee Guidelines Memo. Both applications failed to comply with paragraphs 2, 3, 4, 6, and 9 of the Fee Guidelines Memo.

Many of the entries of both *Copeland* and *Rapp* failed to indicate the substance of the legal work performed, thus failing to satisfy paragraph 2 of the Fee Guidelines Memo requiring that an application "itemize each activity, its date, the professional who performed the work, a description of both the nature and substance of the work and the time expended thereon."

Paragraph 3 of the Fee Guidelines Memo requires:

In order for time spent on activities such as court appearances, preparation for court appearances, conferences, telephone calls, drafting documents, and research to be compensable, the nature and purpose of the activity must be noted. Time entries for telephone calls must list the person with whom the applicant spoke and give a brief explanation of the conversation. Time entries for letters must state the addressee and give a brief explanation of the letter's contents. Time entries for documents must specify the document involved. Time entries for legal research must specify the document involved. Time entries for legal research must describe the matter or proceeding researched.

The following *Copeland* entries do not comport with paragraph 3 of the Fee Guidelines Memo:

| Date | Description | Time |
|---|---|---|
| 1/17/92 | Review letter from Attorney Forest | .20 |
| 1/22/92 | Review letter from Attorney Swisher | .20 |
| 3/31/92 | Review of Motion from GMAC; letter to client | .20 |
| 3/31/92 | Call from Attorney Swisher; letter to client re: insurance | .20 |
| 4/11/92 | Review letter from Attorney Swisher and Order | .10 |
| 12/01/92 | Review motion; review file; letter to client | .30 |
| 12/02/92 | Call from client | .20 |

debts in full, arguably the only benefit the Debtor received was either to pay less on his one unsecured debt or pay it over a period of time.

The total attorney's fees requested, however, was more than three times the Debtor's only unsecured debt!

| Date | Description | Time |
|------|-------------|------|
| 12/08/92 | Review information from trustee; call to client | .20 |
| 2/17/93 | Review notice from GMAC; review file; letter to client | .30 |
| | **TOTAL:** | **1.90** |

The *Rapp* application also did not comply with paragraph 3 of the Fee Guidelines Memo:

| Date | Description | Time |
|------|-------------|------|
| 4/30/92 | Call from client re: license tab problem; call to Chrysler; call from Chrysler and conference with creditor | .30 |
| 5/29/92 | Study letter from Roger Sackett and attachments | .20 |
| 6/23/92 | Prepare for Confirmation hearing; call to Tuttle | .30 |
| 10/12/92 | Received call from Attorney Forrest [note: counsel agreed at hearing that this entry was billed to the wrong case and should not have been included in his application] | .20 |
| 10/15/92 | Review proposed stipulation for adequate protection; review file; call to trustee; call to Attorney Dunn re: necessary changes | .60 |
| 10/19/92 | Review order from opposing attorney approve; obtain trustee approval and file | .30 |
| 1/20/93 | Received call from client; call to Attorney Dunn re: repossession | .40 |
| 2/02/93 | Call to trustee re: show cause hearing; letter to client | .20 |
| 2/25/93 | Received letter from Attorney King re: car; letter to client | .20 |
| | **TOTAL:** | **2.70** |

---

To the extent the above time entries in both *Copeland* and *Rapp* may reflect messages left or taken as to calls made, the time is not compensable as legal work. Nor are telephone calls made to the chapter 13 Trustee requesting or confirming adjournments of show cause or confirmation hearings or calls to the court to check on case numbers.

Paragraph 4 of the Fee Guidelines Memo provides as follows:

Applicants must not attempt to circumvent minimum time requirements or any of the detail requirements by "lumping" or "bunching" a number of activities into a single entry. Each type of service must be listed with a corresponding specific time allotment.

Virtually all of the *Rapp* time entries cited for failure to comply with paragraph 3 also failed to comply with the Fee Guidelines Memo's admonition against "lumping". This prohibition against "lumping" or "bunching" has been recognized by this court, *See Bush*, 131 B.R. at 366; and *Mayes*, 101 B.R. at 498; as well as a number of other courts. *In re Wiedau's, Inc.*, 78 B.R. 904, 908 (Bankr.S.D.Ill.1987); and *In re WHET, Inc.*, 58 B.R. 278 (Bankr. D.Mass.1986). Authority exists for disallowing *in toto* all services which have been "lumped" together. *In re Horn & Hardart Baking Co.*, 30 B.R. 938, 944 (Bankr. E.D.Pa.1983). In addition to several of the entries reflected above, the following *Copeland* entries were bunched contrary to paragraph 4's admonition:

| Date | Description | Time |
|------|-------------|------|
| 12/31/91 | Review mortgage claim; review feasibility; letter to client | .40 |
| 01/14/92 | Call to 1–313—238–4030; meeting with client re: change of employment and possible amendment; call to Attorney Forest re: P.O.E.; call from Trustee re: Las Olas Resorts | .50 |
| 1/28/92 | Phone call from GMAC opposing attorney Swisher re: fair market value of vehicle and 341 meeting; review fax letter from GMAC; check NADA value; memo to file | .50 |
| 1/29/92 | Review file and preparation for court; memo to file; court hearing, 341 meeting; conference with clients; memo to file | 1.40 |
| 2/02/92 | Review of file; phone call to Trustee; dictation of letter to opposing attorney Swisher | .60 |
| 2/24/92 | Review Confirmation Order; review status of attorney fees; call to Trustee | .30 |
| 3/21/93 | Prepare final draft amendment; prepare fee application & order | .60 |
| | **TOTAL:** | **4.30** |

Neither *Copeland* nor *Rapp* provided a summary of the hours and hourly rates charged by each professional, required by paragraph 6. Failure to comply with paragraph 6 makes it far more difficult to ascertain if counsel has complied with paragraph 9 which, among other things, requires that "the rates charged be commensurate with the level of skill required for a particular task." When this requirement is not met the court must piece together the lodestar factors from different parts of the file and from the billings attached to the application.

■ Counsel did comply with paragraph 15 which requires that a copy of the retainer agreement be filed with the court. However, filing the retainer agreement does not abrogate the requirement that reasonable compensation be allowed only for actual and necessary legal work.

■ This court ordinarily will not award attorney's fees for preparation of fee applications in the routine consumer chapter 13 case because such work does not benefit the estate but only the attorney requesting those fees. *Bush*, 131 B.R. at 367. Moreover, because of the routine nature of this practice, producing a fee application should involve little if any work for attorneys who have consistently kept time records in the format required by the Fee Guidelines Memo. Of the $370.00 in additional fees sought in *Copeland*, at least 45% or $170.00 represents fee application work (4/22/92, 5/20/92 and 3/21/93). Because of the failure of the application to comply with paragraph 3 of the Fee Guidelines Memo it is possible that an even higher percentage of the fees requested was related to counsel's request to be paid more (12/01/92, 12/02/92, and 12/08/92).

■ In *Rapp* counsel charged $125.00 or 19% of the request for additional fees to his fee application. The court does not believe this is appropriate in this chapter 13 case.

■ We now turn our attention to application of the lodestar method. Where a fee application is submitted which complies with the Fee Guidelines Memo it is relatively simple for the court to perform its task under § 330(a) and determine whether the hours billed were reasonable. If there are specific items which are objectionable, they can easily be excised, and the fee can be adjusted with a modicum of accuracy. This court agrees with the *Atwell* court that global adjustments should be made only rarely as a properly performed lodestar analysis should take into account all factors which affect the reasonableness of the fees charged. But because counsel in these cases failed to comply with the Fee Guidelines Memo in several crucial respects, it is impossible to make the lode-

star computation here with any precision. We view the failure of counsel to meet the requirements of the Fee Guidelines Memo as a concomitant failure to carry the applicant's burden to prove the reasonableness of the fees requested. Under these circumstances, the only way for the court to discharge its duty under § 330(a) is to either disallow the application in its entirety or to make a global adjustment. The court chose the latter course.

Although falling within the upper range of hourly rates allowed in this District for chapter 13 legal work, the court made a preliminary, not final, determination that based upon counsel's chapter 13 experience counsel would be allowed to request an hourly rate of $125.00 in the *Rapp* case.[5] Based on counsel's experience, however, allowance of this high rate necessarily brings with it the court's, and presumably, the debtor and chapter 13 Trustee's expectation that counsel will charge only for substantive legal work performed. To the extent counsel is being well compensated for his experience, he should be able to accomplish his tasks quicker and with more proficiency than a less experienced attorney charging a lower hourly rate.

Starting with the $125 hourly rate, the court determines that the substantive legal work required by *Rapp* should have taken no more than 9.6 sixty minute, not billable, hours. The amount of $1200 constitutes reasonable compensation for the legal work performed in *Rapp*. Based on the $100 hourly rate and my understanding of the amount of legal work which *Copeland* required, the legal work done in *Copeland* should have taken approximately 9.7 sixty minute, not billable, hours. The amount of $970.00 constitutes reasonable compensation.

 The question on appeal is whether the court abused its discretion in making the global adjustments it did. *In re Wildman*, 72 B.R. 700, 705 (Bankr.N.D.Ill.1987); *In re U.S. Golf Corp.*, 639 F.2d 1197 (5th Cir.1981); *Cohen & Thiros v. Keen Enterprises*, 44 B.R. 570 (N.D.Ind.1984); *In re*

*AOV Indus., Inc.*, 43 B.R. 468 (D.D.C. 1984), *vacated and remanded in part on other grounds*, 798 F.2d 491 (D.C.Cir.1986). We heartily agree with Judge Schmetterer's observations in *Wildman* that because of this standard "the judge's authority should be exercised with great care and fairness." 72 B.R. at 705. One way to check our work is to compare the amounts by which the fees were reduced with the amounts that would have been allowed had all the entries identified above which do not comport with the Fee Guidelines Memo, the amounts billed for preparation of fee applications, and voluntary reductions by counsel been stricken.

In *Rapp* a total of $1,659.78 in fees was requested, of which $1,200 was allowed. This amounts to a total disallowance of $459.78. 1.9 hours were identified above as nonconforming. At a billable rate of $125 per hour this represents $237.50 in fees. The amount requested for preparation of the fee application was $125. Finally, at hearing counsel agreed that the entry for May 19, 1992 for 1.3 hours spent reviewing for and attending the first meeting of creditors should be reduced to .50 hours. April 7, 1993 Transcript at 7. The reduction of .80 hours at the rate of $125 amounts to $100. The total of these three items is $462.50, or $2.72 more than the global reduction made by the court in this case.

In *Copeland* a total of $1,840 in fees was requested by counsel; total fees in the amount of $970 were allowed. Total disallowed fees were $870. There were 7 total hours identified above as not complying with the Fee Guidelines Memo which, billed at a rate of $100 per hour, amounts to $700 in fees. The amount requested for preparation of the fee application in this case was $170. The total for these two items, $870, is exactly the same as the global reduction made by the court.

### VI. Conclusion.

We are reminded of Justice Sandra Day O'Connor's prescient observation in *Pio-*

---

**5.** This determination may need to be revisited in future cases in light of the fact that this rate represents a twenty percent increase from the $100 hourly rate counsel requested in *Copeland*.

*neer Investment Services Co. v. Brunswick Associates,* —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), that "An entity in bankruptcy can ill afford to waste resources on litigation; every dollar spent on lawyers is a dollar creditors will never see." It is important that debtors in bankruptcy have competent, qualified counsel, and it is equally important that counsel be fairly and reasonably compensated. In the vast majority of chapter 13 cases, this court therefore allows the fees requested in full. But in a time when the bankruptcy system is generally perceived as serving the interests of bankruptcy professionals at the expense of the debtors and creditors the system was designed to serve, this court will not allow the fees of professionals to exceed reasonable limits. As emphasized in *Atwell,* however, the responsibility to see that fees are reasonable is shared with counsel, who are expected to exercise some billing judgment in their requests for compensation. It is unfortunate that the exercise of that judgment was absent in these cases.