In re Debra Ann THORN, Debtor.

In re Douglas B. AYER, Debtor.

In re Deborah F. GATES, George W. Gates, Jr., Debtors.

Bankruptcy Nos. 95–61863, 95–61877 and 95–61429.

United States Bankruptcy Court, N.D. New York.

Dec. 1, 1995.

Trustee ("Trustee"), to a request for attorney's fees by Michelle C. Marans, Esq. ("Marans") of the law firm of Bodow, Antonucci & Fintel, LLP (the "Firm") in three separate cases filed pursuant to Chapter 13 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"), to wit: *In re Debra Ann Thorn*, Case No. 95–61863 ("Thorn case"), *In re Douglas B. Ayer*, Case No. 95–61877 ("Ayer case"), and *In re Deborah F. and George W. Gates, Jr.*, Case No. 95–61429 ("Gates case"). A hearing on confirmation of the plans in all three cases was held in Utica, New York, on July 26, 1995. Oral argument was heard by the Court in connection with the Trustee's objection[1], and the parties were afforded an opportunity to file memoranda of law. The matter was submitted for decision on September 1, 1995.[2]

Bodow, Antonucci & Fintel, LLP, Syracuse, New York (Wayne Bodow, Michelle C. Marans, of counsel), for Debtors.

Mark W. Swimelar, Chapter 13 Trustee, Syracuse, New York.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Presently before the Court is an objection filed by Mark W. Swimelar, Esq., Chapter 13

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1), and (b)(2)(A).

## FACTS AND ARGUMENTS

The Gates case was filed by the Firm on April 27, 1995; both the Thorn case and the Ayer case were filed on May 30, 1995. A review of the petitions in all three cases reveals the following:

|  | GATES | THORN | AYER |
|---|---|---|---|
| Liabilities | $12,106.53 | $8,017.51 | $18,848.87 |
| Secured | 2,000.00 | 3,837.50 | 500.00 |
| Priority |  |  | 642.43 |
| Unsecured | 10,106.53 | 4,180.01 | 17,706.44 |
| Assets | 6,270.77 | 5,297.50 | 3,570.00 |
| Exemptions | 4,270.77 | 1,460.00 | 3,570.00 |
| Income/month | 914.32 | 846.00 | 2,310.72 |
| Expenses/month | 809.00 | 672.00 | 2,211.53 |
| Monthly Plan Payment | 105.32 | 174.00 | 99.10 |
| Total payments (36) | 3,791.52 | 6,264.00 | 3,570.84 |
| Dividend (unsecured) | <3% ($305.55) | <2% ($78.93) | <6% ($1,144.74) |

1. In addition to objecting to the attorney's fees in the three cases, the Trustee initially also filed an objection to confirmation in all three cases, alleging that the plans had been filed in bad faith. According to the Trustee's memorandum of law, filed August 31, 1995, he has withdrawn his objection to confirmation.

2. Because there are overlapping issues of law and all three cases involve the allowance of one Chapter 13 debtor's attorney fees requested by the Firm, the Court has elected to consolidate the cases for the limited purpose of issuing this decision.

There was a single secured creditor in each of the cases, and that creditor's claim was "crammed down" to allow for full payment only on the secured portion of its claim. An examination of all three files reveals that other than the objection filed by the Trustee, only one creditor opposed its treatment under the Debtors' plans, that being the Ford Motor Credit Corporation in the Thorn case, which holds a security interest in the Debtor's automobile.

The Firm requested approval of $1,500 in attorney's fees in both the Thorn and Ayer cases. In the Thorn case a $400 retainer had been paid by the Debtor, and the balance of $1,100 was to be paid through the Debtor's plan. In the Ayer case the Firm received $600 as a retainer and requested that $900 be paid through the Debtor's plan. In the Gates case, the fee was $1,450, of which $625 had been paid as a retainer and the balance of $825 was to be paid through the plan. As is the custom in Chapter 13 cases, no time records were provided to the Court in support of the Firm's fee requests at the time of the hearing on confirmation. Nor did the Firm provide any time records with its memorandum of law filed September 1, 1995, in response to the Trustee's opposition.

According to the memorandum of law submitted by the Firm, it provided various services to the debtors, including advising them of their bankruptcy and non-bankruptcy alternatives; referral of creditor phone calls to the Firm; review of the debtors' worksheets prior to preparing each petition; preparation of the bankruptcy petition, and review of the petition with each debtor prior to his/her signing it. The Firm also appeared at the meeting of creditors on behalf of each debtor, as well as the hearing on confirmation. In addition to these services, the Firm also indicated that it had an ongoing duty to monitor the debtors' plans and also was available for plan modification and financial planning. Furthermore, it was obligated to review the Trustee's reports, motions to allow claims and, when necessary, motions to dismiss or convert.

The Trustee contends that each of the three cases "would have about the same level of difficulty as a Chapter 7 case." Trustee acknowledges that having filed petitions pursuant to Chapter 13 of the Code, rather than Chapter 7, Debtors were able to cram down a secured creditor and retain the collateral in each case. Nevertheless, the Trustee argues that, in his opinion, none of the cases should have required more than four hours, including one hour for initial consultation, one hour to sign the petition, one hour to attend the meeting of creditors and a fourth hour to attend the confirmation hearing. Trustee asserts that "[t]here was nothing complex, novel or difficult with these cases." Accordingly, Trustee is requesting that the fees be reduced to $600 to $750 per case. Trustee asserts that the fees of $1,450 to $1,500 exceed the reasonable value of the legal services performed by the Firm on behalf of each of these debtors.

## DISCUSSION

It is important that debtors in bankruptcy have competent, qualified counsel, and it is equally important that counsel be fairly and reasonably compensated. In the vast majority of chapter 13 cases, this court therefore allows the fees requested in full. But in a time when the bankruptcy system is generally perceived as serving the interests of bankruptcy professionals at the expense of the debtors and creditors the system was designed. to serve, this court will not allow the fees of professionals to exceed reasonable limits. *In re Copeland,* 154 B.R. 693, 704 (Bankr.W.D.Mich.1993) (Hon. Jo Ann C. Stevenson, Bankruptcy Judge).

This Court has long adhered to a policy of approving the fees of Chapter 13 debtors' attorneys while recognizing that in some in-

stances the fees represent an enhancement somewhat beyond a reasonable compensation for the actual and necessary legal work performed by counsel. The Court's approach was intended to encourage attorneys in the community to develop their expertise in Chapter 13 bankruptcies in order to be able to appropriately counsel eligible debtors to file Chapter 13 petitions. Unfortunately, there has not been a significant increase in the number of practitioners appearing before this Court on behalf of Chapter 13 debtors. In light of the Trustee's opposition herein, as well as the significant amendments to Code § 330 made effective October 23, 1994, and application to the cases herein, the Court is compelled to re-examine its policy.

Code § 330(a)(4)(B) provides that in a "chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the *debtor* in connection with the bankruptcy case based on consideration of the benefit and necessity of such services to the *debtor* and the other factors set forth in this section" (emphasis added).

Code § 330(a)(3) requires that a court examine the nature, extent and value of the services for which compensation is sought and make a determination of the amount of "reasonable" compensation based on such factors as (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of the case; (D) whether the services were performed within a reasonable amount of time, and (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in nonbankruptcy cases.

Typical services rendered by an attorney on behalf of a Chapter 13 debtor include (1) preparation and filing of the petition and plan; (2) office and telephone conferences with the debtor and creditors to discuss objections to the plan or various claims; (3) appearance at the § 341 meeting of creditors and (4) appearance at the confirmation hearing. *See In re Allen,* 1995 WL 548855 at *2– 3 (Bankr.S.D.Ga.1995). It may also be nec-

essary to make an appearance in court "in the event that lien avoidance, adequate protection, dismissal, stay relief, or claims objection issues become contested matters or adversary proceedings." *Id.* at *2.

The Court is cognizant of the customary or usual fees for these services in Chapter 13 cases and the fact that in most cases there are no objections to said fees. However, the Court has an obligation to examine the propriety of attorney's fees, whether or not an objection is raised. *Copeland, supra,* 154 B.R. at 697 (citations omitted). The Code, as amended now, specifically provides that the Court on its own motion or on the motion by the Trustee or any other party in interest may award compensation in an amount that is less than that requested by the attorney. *See* Code § 330(a)(2). As Judge Stevenson in *Copeland* points out, the court's obligation is particularly important in a Chapter 13 case given that the debtor is not likely to object since any monies paid to the attorney simply means that any disposable income available to pay creditors is reduced. *Id.* At the same time, it is also unlikely that the creditors will object since the reduction is likely to be 'too small to merit the expense and attention of a court filing.' *Id.* at 698 (*quoting In re Patronek,* 121 B.R. 728, 731 (Bankr.E.D.Pa.1990)).

It is the applicant's burden to demonstrate entitlement to the requested fees. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983) ("[F]ee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."); *see also In re Ostas,* 158 B.R. 312, 323 (N.D.N.Y.1993); *In re Taylor,* 1995 WL 358206 at *2 (Bankr.D.Idaho), *citing In re Xebec,* 147 B.R. 518, 524 (9th Cir.BAP 1992). In the matter *sub judice,* the Trustee has filed an objection to the Firm's fees, arguing that the legal services in connection with each of the three cases should have required approximately four hours of the attorney's time, and compensation commensurate with fees in a Chapter 7 case would be more appropriate, namely $600 to $750 per case. In response, the Firm has not provided the Court with any time records to support its

request for $1,450 to $1,500.[3] In its memorandum of law, the Firm points out that on behalf of each of the debtors, it is available to respond to motions to dismiss or convert and has an ongoing to duty to monitor the debtors' plans. In the three cases presently under discussion, the files contain no motions to dismiss or convert. Furthermore, with the exception of Ford Motor Credit Corporation in the Thorn case, apparently there were no objections that required modification of the plans preconfirmation. It is the practice of this Court, as Debtors' counsel is well aware, to award additional compensation postconfirmation in the event that it is necessary for a debtor's attorney to respond to a motion to dismiss or convert or to file a motion to modify a plan. What must concern the Court in its determination of attorneys' fees in these three cases is what were the *actual and substantive* legal services rendered on behalf of these particular debtors, not services which the Firm's attorney elects to perform, i.e. preparation of the petition, and those which the attorney *might* need to render on behalf of one of the Chapter 13 debtors at some time in the future. Furthermore, when the issues are not complex and the process is straightforward, an attorney is expected to exercise "billing judgment" (*see Hensley, supra,* 461 U.S. at 437, 103 S.Ct. at 1941) and is encouraged to reduce its customary fees in appropriate circumstances to reflect a less substantial expenditure of the attorney's time. *Allen, supra,* 1995 WL 548855 at *1.

 In the absence of any documentation or testimonial support of the amount of the fees requested, the Court must give consideration to the factors outlined in new Code § 330 and may also draw on its experience in similar cases to determine a reasonable fee.[4] *Allen, supra,* 1995 WL 548855 at *2; *In re*

*Wright,* 1994 WL 329422 at *1, n. 2 (Bankr. M.D.Ga.1994) (citations omitted). Based on a review of the files in each of the three cases herein, it is apparent that, with the exception of the objection by the Ford Motor Credit Corporation, these were not complex cases. Only the Ayer case included priority tax claims for which treatment was provided and no objection filed. All three cases had a limited number of unsecured creditors with claims totalling between $4,180.01 and $17,706.40. Each of the cases had but one secured creditor, and in each case the debtor(s) elected to cram down the creditor's claim pursuant to Code § 1325(a)(5)(B)(ii). There were no motions to dismiss or convert. The Firm did appear on behalf of the debtors at the § 341 meeting of creditors, as well as at the hearing on plan confirmation. In addition, the Firm did have to respond to the Trustee's objections herein, which initially included an allegation that the cases had been filed in bad faith based on the small dividend (3% to 6%) to be paid to unsecured creditors when compared to the amount of attorney's fees required in each case.

The Court concludes that a fee of between $1,450 and $1,500 is excessive in each of these three cases. Based on the nature of the cases and the services that should have been rendered based on the facts and circumstances discussed above, the Court finds that reasonable compensation should have amounted to $750 for approximately six hours of legal services, including responding to the objection herein, in conjunction with each of the three cases.

---

3. The Court is familiar with the fees charged by the Firm, having previously considered requests for compensation in other matters. In one recent case, the Firm indicated that Marans' hourly rate of compensation was $125 (*see In re Robert Kazel,* Case No. 92–63594). Applying this rate to the request herein for $1,500 in compensation, Marans would have had to provide approximately 12 hours of legal services. Viewed another way, if as the Trustee argues each case should have involved approximately four hours in legal

services, then Marans' hourly fee would be approximately $375, which is certainly an unreasonable rate by the standards in existence in Central New York for attorneys' fees.

4. The Court notes that while the "lodestar" analysis may be somewhat inapplicable to the awarding of attorney fees in a Chapter 13 case, its application herein is prohibited due to a lack of contemporaneous time records.